ZIFFRIN, INC. *v.* REEVES, COMMISSIONER OF REVENUE OF KENTUCKY, ET AL.

No. 8. Argued October 12, 1939.—Decided November 13, 1939.

*Mr. Norton L. Goldsmith,* with whom *Mr. Howell Ellis* was on the brief, for appellant.

*Mr. H. Appleton Federa,* with whom *Messrs. Hubert Meredith,* Attorney General of Kentucky, *M. B. Holifield, Harry D. France,* and *William Hayes,* Assistant Attorneys General, were on the brief, for appellees.

MR. JUSTICE McREYNOLDS delivered the opinion of the Court.

Since March 1933 appellant, an Indiana corporation, has continuously received whiskey from distillers in Kentucky for direct carriage to consignees in Chicago. It has permission under the Federal Motor Carrier Act, 1935,[1] to operate as a contract carrier, and claims the right to transport whiskey as heretofore, notwithstanding inhibitions of the Kentucky Alcoholic Beverage Control Law approved March 7, 1938.[2] By this proceeding it

---

[1] Aug. 9, 1935, c. 498, 49 Stat. 543; U. S. C. Title 49, § 301, *et seq.*

[2] Kentucky Acts 1938, Ch. 2; Baldwin's Supp. to Carroll's Statutes 1936, Ch. 81, § 2554b–97, *et seq.*

seeks to restrain officers of the State from enforcing the contraband and penal provisions of that enactment.

The bill charges that to enforce the Control Law would impair appellant's rights under the Commerce Clause, Federal Constitution, and deprive it of the Due Process and Equal Protection guaranteed by the Fourteenth Amendment. The District Court—three judges sitting—sustained a motion to dismiss. A direct appeal brings the matter here.

The statute is a long, comprehensive measure (123 sections) designed rigidly to regulate the production and distribution of alcoholic beverages through means of licenses and otherwise. The manifest purpose is to channelize the traffic, minimize the commonly attendant evils; also to facilitate the collection of revenue. To this end manufacture, sale, transportation, and possession are permitted only under carefully prescribed conditions and subject to constant control by the State. Every phase of the traffic is declared illegal unless definitely allowed. The property becomes contraband upon failure to observe the statutory requirements and whenever found in unauthorized possession.

Section 52 provides—"It shall be a criminal offense for any person to manufacture, store, sell, purchase, transport or otherwise in any manner traffic in alcoholic beverages as that term is defined in this Act, without first having paid to the Department of Revenue at its office in Frankfort, the license tax required by this Act, and without first having obtained the license required by this Act." [3]

Section 53 declares to be contraband: "(2) Any spirituous, vinous or malt liquors in the possession of any one not entitled to possession of the same under the pro-

---

[3] Baldwin's Supplement to Carroll's Kentucky Statutes 1936, § 2554b–150.

visions of this Act." [4] Peace officers are authorized to seize such contraband and institute proceedings for forfeiture.

Licenses are authorized (§ 18(1)–(9))[5] for distillers, rectifiers, vintners, wholesalers, retailers, and (§ 18(7))[6] for the transportation of liquors to and from any point in the State. Privileges which may be exercised under these are definitely set out.

Section 21—"A distiller's, rectifier's or Vintner's license, as the case may be, shall authorize the holder thereof, at

---

[4] *Id.*, § 2554b–151. "The following property is hereby declared to be contraband: (1) Any illicit still designed for the unlawful manufacture of intoxicating liquors, or any apparatus designed for the unlawful manufacture of spirituous, vinous, malt or intoxicating liquors. An illicit still or apparatus designed for the unlawful manufacture of intoxicating liquors shall include (a) An outfit or parts of an outfit commonly used, or intended to be used, in the distillation or manufacture of spirituous, vinous or malt liquors which is not duly registered in the office of a collector of Internal Revenue for the United States, and the burden of proving that same is so registered shall be on the defendant or defendants under charge; (b) any and all material, equipment, implements, devices, firearms, and other property used or intended for use, directly and immediately, in connection with the illicit traffic in alcoholic beverages. (2) Any spirituous, vinous or malt liquors in the possession of any one not entitled to possession of the same under the provisions of this Act. (3) Any spirituous, vinous or malt liquors in the possession of any one and to which the revenue stamps have not been affixed as and when required by the provisions of the Alcoholic Beverage Tax Act, sections 4281c–1 to and including 4281c–25, Carroll's Kentucky Statutes, one thousand nine hundred and thirty-six (1936) edition. (4) Any distilled spirits, wine or malt beverage in a container of a size prohibited by law or prohibited the particular party in whose possession same is found. (5) Any distilled spirits or wine kept in an unauthorized place within any licensed premises under the provisions of section 77 of this Act. (6) Any motor vehicle, water or air craft, or other vehicle in which any person is illegally possessing or transporting alcoholic beverages."

[5] *Id.*, § 2554b–114.

[6] *Id.*, § 2554b–114 (7).

the premises specifically designated in the license, to engage in the business of distiller, rectifier, or vintner, as the case may be, as those terms are defined in this Act, and to transport for himself only any alcoholic beverage which he is authorized under this license to manufacture or sell, . . ." [7]

Section 22—"Sales and deliveries of alcoholic beverages may be made at wholesale, and from the licensed premises only, . . . (3) by licensed distillers, rectifiers or vintners for export out of the Commonwealth; provided, no distiller, rectifier or vintner, shall sell or contract to sell, give away or deliver any alcoholic beverages to any person, who is not duly authorized by the law of the State of his residence and of the Federal Government if located in the United States, to receive and possess said alcoholic beverages; and in no event shall he sell or contract to sell, give away or deliver, any of his products to any retailer or consumer in Kentucky." [8]

Section 27—"A Transporter's License shall authorize the holder to transport distilled spirits and wine to or from 'the licensed premises of any licensee under this Act, provided" etc.[9] Section 54(7)—"A Transporter's License as provided for in section 18(7) of this Act shall be issued only to persons who are authorized by proper certificate from the Division of Motor Transportation in the Department of Business Regulation to engage in the business of a common carrier." [10]

Section 89—"No person except a railroad company or railway express company shall transport or cause to be transported any distilled spirits or wine, otherwise than as provided in this Act, except such beverages may be

---

[7] *Id.*, § 2554b–118.
[8] *Id.*, § 2554b–119.
[9] *Id.*, § 2554b–124.
[10] *Id.*, § 2554b–154(7).

transported by the holder of any license authorized by section 18 of this Act, from and to express or freight depots to and from the premises covered by the license of the person so transporting distilled spirits or wine." [11]

A license may only issue (§ 33)[12] upon an application which incorporates (§ 36(5))[13] a promise that "the applicant will in all respects and in good faith conscientiously abide by all the provisions of this Act and of any other Act or ordinance relating to alcoholic beverages" etc. Also, (§ 37)[14] there must be a bond "conditioned that such applicant, if granted the license sought, will not suffer or permit any violation of the provisions of this Act" etc.

Having been denied a Common Carrier's Certificate, appellant sought and was refused a transporter's license because it held no such certificate.

In sum, counsel for appellant say: The complaint charges that the Control Law is unconstitutional because repugnant to the Commerce, Due Process and Equal Protection Clauses of the Federal Constitution in that, under pain of excessive penalties, it undertakes to prevent an authorized interstate contract carrier from continuing an established business of transporting exports of liquors from Kentucky in interstate commerce exclusively. Also: Intoxicating liquors are legitimate articles of interstate commerce unless federal law has declared otherwise. Interstate commerce includes both importation of property within a State and exportation therefrom. Prior to the Wilson and Webb-Kenyon Acts, and the Twenty-first Amendment, the powers of the States over intoxicants in both of these movements were limited by the

---

[11] *Id.,* § 2554b–190.

[12] *Id.,* § 2554b–131.

[13] *Id.,* § 2554b–134 (5).

[14] *Id.,* § 2554b–135.

Commerce Clause. These enactments relate to importations only. Exports remain, as always, subject to that clause. "Although a state may prohibit the manufacture of liquor, if a state permits distillation, sale and transportation—as Kentucky does—the rule of law is that the state may not annex to its consent to manufacture and sell the unconstitutional ban upon carriage of interstate exports of liquors by contract carriers."

The court below rejected appellant's insistence and affirmed the asserted power of the State. Like conclusions were approved in *Commonwealth* v. *One Dodge Motor Truck*, 326 Pa. 120; 191 A. 590 (123 Pa. Superior Ct. 311; 187 A. 461); *Clark* v. *State ex rel. Bobo*, 172 Tenn. 429; 113 S. W. 2d 374; *Jefferson County Distilling Co.* v. *Clifton*, 249 Ky. 815; 61 S. W. 2d 645.

The Twenty-first Amendment sanctions the right of a State to legislate concerning intoxicating liquors brought from without, unfettered by the Commerce Clause. Without doubt a State may absolutely prohibit the manufacture of intoxicants, their transportation, sale, or possession, irrespective of when or where produced or obtained, or the use to which they are to be put. Further, she may adopt measures reasonably appropriate to effectuate these inhibitions and exercise full police authority in respect of them. *Clark Distilling Co.* v. *Western Maryland Ry. Co.*, 242 U. S. 311, 320; *Crane* v. *Campbell*, 245 U. S. 304, 307; *Seaboard Air Line Ry.* v. *North Carolina*, 245 U. S. 298, 304; *Samuels* v. *McCurdy*, 267 U. S. 188, 197–198.

Having power absolutely to prohibit manufacture, sale, transportation, or possession of intoxicants, was it permissible for Kentucky to permit these things only under definitely prescribed conditions? Former opinions here make an affirmative answer imperative. The greater power includes the less. *Seaboard Air Line Ry.* v. *North Carolina, supra.* The State may protect her people

against evil incident to intoxicants, *Mugler* v. *Kansas,* 123 U. S. 623; *Kidd* v. *Pearson,* 128 U. S. 1; and may exercise large discretion as to means employed.

Kentucky has seen fit to permit manufacture of whiskey only upon condition that it be sold to an indicated class of customers and transported in definitely specified ways. These conditions are not unreasonable and are clearly appropriate for effectuating the policy of limiting traffic in order to minimize well-known evils, and secure payment of revenue. The statute declares whiskey removed from permitted channels contraband subject to immediate seizure. This is within the police power of the State; and property so circumstanced cannot be regarded as a proper article of commerce. *Sligh* v. *Kirkwood,* 237 U. S. 52, 59; *Clason* v. *Indiana,* 306 U. S. 439.

In effect we are asked by injunction to allow a distiller to do what the statute prohibits—deliver to an unauthorized carrier. Also to enable a carrier to do what it is prohibited from doing—receive and transport within the State.

*Kidd* v. *Pearson, supra:* An Act of the Iowa Legislature in general terms forbade manufacture or sale of intoxicating liquor but permitted these for mechanical or other purposes. An injunction was approved which restrained Kidd from operating his distillery although he claimed the output would be exported for sale beyond the State. This Court said: "Whether a State, in the exercise of its undisputed power of local administration, can enact a statute prohibiting within its limits the manufacture of intoxicating liquors, except for certain purposes, is not any longer an open question before this court. . . . The police power of a State is as broad and plenary as its taxing power; and property within the State is subject to the operations of the former so long as it is within the regulating restrictions of the latter."

The doctrine of that case has been often applied. *Geer v. Connecticut,* 161 U. S. 519; *Rippey v. Texas,* 193 U. S. 504, 509; *Hudson County Water Co.* v. *McCarter,* 209 U. S. 349, 357: "A man cannot acquire a right to property by his desire to use it in commerce among the States. Neither can he enlarge his otherwise limited and qualified right to the same end"; *Sligh* v. *Kirkwood,* 237 U. S. 52; *State Board* v. *Young's Market Co.,* 299 U. S. 59, 63; *Clason* v. *Indiana,* 306 U. S. 439.

The two cases last cited recognize that the State may decline to consider certain noxious things legitimate articles of commerce, and inhibit their transportation. Property rights in intoxicants depend on state laws and cease if the liquor becomes contraband.

We cannot accept appellant's contention that because whiskey is intended for transportation beyond the state lines the distiller may disregard the inhibitions of the statute by delivery to one not authorized to receive; that the carrier may set at naught inhibitions and transport contraband with impunity.

The point suggested in respect of Due Process is not in accord with what has been decided in the cases above referred to.

The record shows no violation of Equal Protection. A licensed Common Carrier is under stricter control than an ordinary contract carrier and may be entrusted with privileges forbidden to the latter.

Here the state law creates no discrimination against interstate commerce. It is subjected to the same regulations as those applicable to intrastate commerce.

The Motor Carrier Act of 1935 is said to secure to appellant the right claimed, but we can find nothing there which undertakes to destroy state power to protect her people against the evils of intoxicants or to sanction the receipt and conveyance of articles declared contraband. The Act has no such purpose or effect.

The power of a State to regulate her internal affairs notwithstanding the consequent effect upon interstate commerce was much discussed in *South Carolina Hwy. Dept.* v. *Barnwell Bros.*, 303 U. S. 177, 189. There it was again affirmed that although regulation by the State might impose some burden on interstate commerce this was permissible when "an inseparable incident of the exercise of a legislative authority, which, under the Constitution, has been left to the states." In the absence of controlling language to the contrary—and there is none— the Federal Motor Carrier Act should not be brought into conflict with this reiterated doctrine.

The challenged decree must be

*Affirmed.*

MR. JUSTICE BUTLER took no part in the consideration or decision of this case.