ROBERTS *v.* STATE.

4682                                   247 S. W. 2d 360

Opinion delivered March 24, 1952.

Rehearing denied April 21, 1952.

*James Johnson, Paul K. Roberts* and *J. R. Wilson,* for appellant.

*Ike Murry,* Attorney General and *George E. Lusk, Jr.,* Assistant Attorney General, for appellee.

GRIFFIN SMITH, Chief Justice. The appellant as defendant was convicted October 23, 1951, on an indictment charging that he possessed intoxicating liquors upon which the domestic excise tax had not been paid, Ark. Stat's, § 48-934; Act 306 of 1947. Collaterally, see § 48-935. The 1941 statute fixed the penalty at not less than $50 nor more than $500, or imprisonment not exceeding six months, "or both so fined and imprisoned in the discretion of the court or jury." The judgment, responsive to the jury's verdict, was that a fine of $500 should be paid and that the defendant should serve sixty days in jail. The crime is a misdemeanor.

In asking for arrest of judgment it was argued (1) that the court overlooked the defendant's demurrer to the indictment; (2) a directed verdict should have been given for want of evidence showing that Roberts was in possession of liquor found by officers; (3) the state's evidence tending to show that the confiscated intoxicants were brought from Louisiana failed to connect the defendant with their purchase, transportation, or ownership; (4) the Arkansas excise tax is, in effect, an impost or duty affecting commerce among the states and is in conflict with Art. 1, § 8(3) of the U. S. constitution; (5) there was a denial of due process of law as defined by the Fourteenth amendment, and (6) the trial court was without jurisdiction. This petition was overruled, as was the defendant's motion for a new trial, containing 19 assignments.

An inference to be drawn from Assignment No. 5 is that Roberts was under indictment on another charge, an objection being that the defendant's counsel had been informed that Case No. 1988 would be tried first, instead of No. 1989.

The testimony of B. A. Courson, Ashley county sheriff, is in many respects corroborated by others who with

a search warrant went to Roberts' suburban home to ascertain whether information received by the grand jury regarding Roberts' reported activities was true. No liquor was found in the house, but considerable was discovered back of it. A pasture or uncultivated area to the rear of the residence was separated from the back yard by net wire three or four feet high. The officers, in making their search, stepped over this fence. In the pasture there were a few trees—small pines or brush. A pint of untaxed liquor was found concealed in this pasture. Although different persons varied in estimates of the distance the liquor was from Roberts' house, the Sheriff and at least one other witness testified that it was approximately fourteen steps, and "to the right rear of the house."

In a field west of Roberts' residence, and approximately 350 feet away, officers found a sizable cache of intoxicants, including 13 pints of apricot liquor [or brandy], four pints of a brand known as Paul Jones, one pint of Sunnybrook, twelve pints of gin, half a gallon of "moonshine," four empty gallon jars, and 214 empty bottles. The Roberts house faces east, and the discoveries were to the west, or back of it.

Another witness testified that the contraband was found in different piles [concealed] in small brush—three or four pints in a clump. The pasture in which the single pint of liquor was found was separated by a fence from the field where the larger quantities were discovered. Some of the bottles were very near this second fence. There were houses within a block of Roberts' home. The officers did not observe any well-defined paths leading into or from the field or pasture, although trailways were to be observed from one deposit of liquor to another. The realty was owned by the defendant's father, who emphatically disclaimed knowledge of the transactions. He also denied that his son had control of the pasture or field; and he mentioned a number of people who were known to utilize the premises at their convenience. The field, as distinguished from the pasture, was par-

tially cultivated. The father lived about a hundred yards south of the defendant's home.

Edward Lohmann, an investigator for the Alcohol Control Division of the State Department of Revenues, testified that he made three trips to Roberts' home before finding him on the premises. Lohmann informed Roberts that he wanted to talk with him and the two walked "some distance into the field." Lohmann told Roberts he wanted some whiskey and in turn was asked who he was, what he was doing, and whether he could be identified through mutual acquaintances. This conversation continued for nearly fifteen minutes and Lohmann repeated that he wanted some whiskey—"moonshine." In the course of this conversation Lohmann said, "Are you sure you have any?" and Roberts replied, "Yes, I have got it all right, but I am afraid to sell it to you because I don't know you too well." Later Lohmann said, "Well, if I am going to buy any I want good stuff," and Roberts replied, "It *is* good moonshine—the best you can get." The conversations occurred "about a week or so" before the warrant of arrest was issued on May 25th.

*First—Sufficiency of the Evidence.*—Many factors may contribute to a jury's determination in reaching a verdict of guilty where none of several, standing alone, would be sufficient. It is the cumulative effect of circumstance added to events having probative value as evidence that may convince the fact-finders in a criminal case that the truth has been ascertained beyond a reasonable doubt. Here the relationship of father and son is highly persuasive of the probability that the defendant would have assumed the right to use the unoccupied lands. This assumption would ordinarily attend as a matter of course, even though the father had no idea of the particular use to which the property was being put and perhaps would have prohibited such use had the purpose been known.

The sheriff testified that Roberts' reputation was that of a bootlegger. It is objected that the line of inquiry was not sufficiently specific, that the term "boot-

legger" was misapplied, and that the minds of jurors were improperly swayed by the factual conclusion that came from the sheriff. Our holdings do not support these contentions. *Burrell* v. *State,* 203 Ark. 1124, 160 S. W. 2d 218; *Freyaldenhoven* v. *State,* 217 Ark. 484, 231 S. W. 2d 121; *Eoff* v. *State,* 218 Ark. 109, 234 S. W. 2d 521.

It is highly improbable that the lawmaking body, in using the word "possession," had in mind the restricted meaning intended when possession in fact is the subject of legislation. Possession in law may be constructive. "All I possess, indoors and outdoors," has been held sufficient in a will to pass real property. 28 R. C. L., 237.

*Second—Validity of the Excise Tax Law.*—Our cases holding that one dealing in or with liquor is a mere licensee, and that his rights do not exceed the bounds legislatively set, are too numerous to require citation. The 21st amendment to the Federal constitution recognizes this right of a state, and U. S. Supreme Court decisions have not infringed. *Ziffron* v. *Reeves,* 308 U. S. 132, 60 S. Ct. 163, 84 L. Ed. 128. Validity of the excise tax law was upheld by this court in *McHenry* v. *State*— an Ashley county case, 219 Ark. 401, 242 S. W. 2d 707. There was reference to the emergency clause of the enactment in considering probable intention of the General Assembly.

But a more complete answer to appellant's contentions in the case at bar is that he disclaimed ownership of the liquor and disavowed—by his plea of not guilty and in counsel's argument—knowledge that it was on the premises adjoining his home. If it be argued that the jury's verdict had the effect, as a matter of law, of imputing possession to the defendant, there is no evidence showing origin of the commodity other than testimony that containers bore Louisiana stamps. Some liquor, however, was identified as "bootleg." Certainly the Federal question sought to be raised could not apply to this whisky, and that portion alone was sufficient to convict when evidence of its possession was supplied. In instructing as to the quantum of evidence necessary to

support a verdict the court distinguished between direct and circumstantial evidence, saying that when circumstances were relied upon ". . . they must be so connected and cogent as to show guilt beyond a moral certainty and beyond a reasonable doubt, and to the exclusion of every other hypothesis."

A detailed discussion of all objections raised would unnecessarily lengthen this opinion. All instructions, including those given, those refused, and those modified over the defendant's objections and given as modified, have been examined. Our conclusion is that there were no prejudicial errors and that the judgment should be affirmed. It is so ordered.