Mr. Justice Black,
with whom Mr. Justice Goldberg joins,
dissenting.
The appellee, Idlewild Bon Voyage Liquor Corporation, buys wines and intoxicating liquors from bonded wholesale warehouses, brings them into the State of New York, and sells them at retail in the John F. Kennedy Airport. Idlewild does not have and cannot obtain a New York license; therefore its business is in violation of New York law. Idlewild keeps a stock of liquor in New York under Customs inspection, and customers come into Idlewild’s shop, choose the kind of liquor they want, and pay for it. These retail sales are just like sales made by New York’s licensed and regulated liquor dealers, with a single difference: other New York retailers normally make delivery across the counter while Idlewild arranges with its customers to put their purchases, under United States Customs supervision, aboard planes so that the customers take physical possession of the liquor, not in New York, but at destinations abroad. The airport where the sales take place is not a federal enclave where even as to liquor federal law can constitutionally control,[1] *467 but is New York territory subject to New York, not federal, jurisdiction. The Court nevertheless strikes down New York’s law barring Idlewild from selling intoxicating liquors in New York. The ground for invalidating the law is that it conflicts with the Commerce Clause and with Treasury regulations promulgated under 19 U. S. C. § 1311 under which Idlewild’s sales and deliveries to foreign-bound planes are for customs purposes supervised by Customs officials. I think, however, that while Customs officials have the right to perform their duties relative to customs, the Twenty-first Amendment confers exclusive jurisdiction upon the State of New York to regulate all liquor business carried on in New York. Section 2 of this Amendment, which became effective December 1933, provides:
“The transportation or importation into any State, Territory, or possession of the United States for delivery or use therein of intoxicating liquors, in violation of the laws thereof, is hereby prohibited.”
Even though the language of this Amendment clearly leaves the States free to control the importation of and traffic in liquors within their boundaries, it was argued in State Board v. Young’s Market Co., 299 U. S. 59 (1936), that it would be a violation of the Commerce Clause and of the Equal Protection Clause for a State to require a fee of persons importing beer from outside the State. Pointing out that such a discrimination would have violated the Commerce Clause before adoption of the Twenty-first Amendment, this Court held that since that Amendment a State was not required to “let imported liquors compete with the domestic on equal terms. To say that, would involve not a construction of the Amendment, but a rewriting of it.” Id., at 62. The Court went on to hold that the claim that the State’s discriminatory “statutory provisions and the regulations are void under *468 the equal protection clause may be briefly disposed of. A classification recognized by the Twenty-first Amendment cannot be deemed forbidden by the Fourteenth.” Id., at 64. Following the Young’s Market case, this Court has said and repeated that since the Twenty-first Amendment “the right of a State to prohibit or regulate the importation of intoxicating liquor is not limited by the commerce clause.” Joseph S. Finch & Co. v. Mc-Kittrick, 305 U. S. 395, 398 (1939); Indianapolis Brewing Co. v. Liquor Control Comm’n, 305 U. S. 391, 394 (1939). The principles of these cases have been uniformly followed until today. E. g., California v. Washington, 358 U. S. 64 (1958); Ziffrin, Inc., v. Reeves, 308 U. S. 132 (1939). The Court today attempts to distinguish this case from our previous cases, but I find myself unpersuaded by the Court’s distinction.
In Young’s Market, the Court found it so clear that the “broad language” of the Twenty-first Amendment gave States exclusive power to regulate or tax liquor transactions in those States that it rather impatiently refused to consider the Amendment’s history urged in limitation of that language. Young’s Market, supra, 299 U. S., at 63-64. I agree with Justice Brandéis that history should not be necessary to prove what is obvious. But now that the Amendment is interpreted in a way that takes away part of the power that I think was given to the States by the Amendment and confers it on Customs officials, it becomes appropriate to look to the history of the Amendment’s adoption. As reported by the Senate Committee on the Judiciary in S. J. Res. 211, 72d Cong., 2d Sess., the proposed amendment provided in Section 2, “The transportation or importation into any State, Territory, or possession of the United States for delivery or use therein of intoxicating liquors, in violation of the laws thereof, is hereby prohibited.” 76 Cong. Rec. 4138 (1933). That language is in the present Amendment. *469 But the proposal also' contained a Section 3, not found in the present Amendment; that Section provided, “Congress shall have concurrent power to regulate or prohibit the sale of intoxicating liquors to be drunk on the premises where sold.” Ibid. Proposing to leave even this remnant of federal control over liquor traffic gave rise to the only real controversy over the language of the proposed Amendment. Senator Wagner of New York, who could not have known that his State would because of today’s opinion be the first to be denied control of liquor traffic within the State, opposed Section 3 because it would defeat the proposed Amendment’s purpose “to restore to the States control of their liquor problem.” Id., at 4145. Senator Wagner argued that giving the Federal Government even “apparently limited power” would allow that power to be “extended to boundaries now undreamed of and unsuspected” by those supporting the proposed Amendment. Id., at 4147. It is clear that the opposition to Section 3 and its elimination from the proposed Amendment rested on the fear, often voiced during the Senate debate,[2] that any grant of power to the Federal Government, even a seemingly narrow one, could be used to whittle away the exclusive control over liquor traffic given the States by Section 2. Having heard those fears expressed, Senator Robinson of Arkansas, the Senate Majority Leader, asked for a vote “to strike out section 3.” Id., at 4171. It was because of these fears that the Senate then voted to take Section 3 out of the proposed Amendment while retaining Section 2 and its broad grant of power to the States. Id., at 4179.
During the debate the Senators brought out quite clearly what plenary powers Section 2, as it now appears in the Twenty-first Amendment, meant to give the States. *470 Senator Blaine of Wisconsin, chairman of the subcommittee which had held hearings on the resolution and floor manager of the resolution in the Senate, agreed that Section 3 "ought to be taken out of the resolution” and Section 2 left in, because the “purpose of section 2 is to restore to the States by constitutional amendment absolute control in effect over interstate commerce affecting intoxicating liquors which enter the confines of the States.” Id., at 4143. Speaking of the same section, Senator Walsh of Montana, also a member of the subcommittee, said, “The purpose of the provision in the resolution reported by the committee was to make the intoxicating liquor subject to the laws of the State once it passed the State line and before it gets into the hands of the consignee as well as thereafter.” Id., at 4219.
The legislative history, of which these passages are typical, should be enough to prove that when the Senators agreed to Section 2 they thought they were returning “absolute control” of liquor traffic to the States, free of all restrictions which the Commerce Clause might before that time have imposed. Moreover, by rejecting Section 3, they thought they were seeing to it that the Federal Government could not interfere with or restrict the State's exercise of the power conferred by the Amendment. Therefore, that the liquor in this case is supervised by United States Customs officials for customs purposes is immaterial. The Amendment promises that each State shall decide what is best for itself in regulating liquor traffic within its boundaries, and the Amendment no more empowers Customs officials to make that decision for a State than it empowers Congress to make it. This view was forcefully expressed by Senator Wagner, who, when urging that Section 3 be eliminated from the proposed Amendment and the States be given complete control of liquor traffic, said: “let the people of each State deal with that subject, and they will do it more effectively *471 and more successfully than the Federal Government has done, because it is not the business of the Federal Government.” Id., at 4146.
That the liquors involved in this case have, in Walsh’s and Blaine’s words, “passed the State line” and “enter [ed] the confines” of the State is beyond dispute. The debates from which I have quoted show that the Senators intended that, once the liquors should enter New York, they would be subject to the “absolute control” of that State. The Twenty-first Amendment promises New York no less.
Idlewild’s liquors, once in the State, are sold at retail to airline passengers at Kennedy Airport. No one disputes that Idlewild thus competes with other New York liquor dealers for the trade of these consumers of liquor. To allow this business to go unregulated by New York is to interfere with the regulatory power which this Court, in State Board v. Young’s Market Co., supra, said each State has under the Twenty-first Amendment. There, id., at 63, the Court said that a State is perfectly free to set up a state liquor monopoly or to confer a liquor monopoly upon some one dealer in the State. It is equally obvious that New York is free to allow only a limited number of dealers to engage in the liquor business. It might do this because it wanted to discourage consumption, or to make it easier to police the liquor traffic, or to accomplish some other objective the State thought worthwhile to protect against the evils which can flow from the trafile. In particular New York might want to see that sales are not diverted to Idlewild from other dealers licensed and regulated by the State. Yet today’s interpretation of the Amendment renders New York impotent to prevent such diversions. Justification for this result is sought by saying that the Customs officials must be unhampered in their duties. But giving Customs officials the power to prevent evasion of customs duties does not immunize *472 liquor dealers from state regulation. Nor does state regulation interfere with federal officials’ performance of their duties. Whether Idlewild stays in business is no legitimate concern of the Customs officials; their concern is that, if Idlewild does do a liquor business, tax-free liquor not be diverted within the country and customs duties not thereby be evaded. Nothing in the New York licensing scheme interferes with the' federal officials’ performance of their duty.
The invalidation of New York’s regulation of Idlewild, I think, makes inroads upon the powers given the States by the Twenty-first Amendment. Ironically, it was against just this kind of judicial encroachment that Senators were complaining when they agreed to S. J. Res. 211 and paved the way for the Amendment’s adoption. Senator Borah of Idaho traced the history of state regulation of liquor traffic from Justice Taney’s decision in the License Cases, 5 How. 604 (1847), which upheld state power over liquor, through Bowman v. Chicago & N. R. Co., 125 U. S. 465 (1888), which Senator Borah said “wiped out the Taney decision,” to Leisy v. Hardin, 135 U. S. 100 (1890), which made the States “powerless to protect themselves against the importation of liquor into the States.” 76 Cong. Rec. 4170-4171 (1933). Because of this judicial history, Senator Borah, wanting to guarantee that the States would not be rendered powerless over liquor traffic, expressed his uneasiness at leaving anything less than a Constitutional Amendment “to the protection of the Supreme Court of the United States.” Ibid. Yet, instead of protecting the States’ power to control liquor traffic, today’s- interpretation of the Twenty-first Amendment leaves New York powerless to regulate Idlewild’s business and others like it and puts the power instead in the hands of United States Customs officials. I would not interpret the Amendment that way.

 Compare Collins v. Yosemite Park & Curry Co., 304 U. S. 518 (1938); Johnson v. Yellow Cab Transit Co., 321 U. S. 383 (1944).

E. g., 76 Cong. Rec. 4143 (1933) (Senator Blaine); 4144-4148 (Senator Wagner); 4177-4178 (Senator Black).