JONES, Justice.
This appeal is a revisit of Swann v. City of Graysville, 367 So.2d 952 (Ala.1979) (Swann I), with two exceptions:
1) The first Mrs. Swann died and her husband remarried. The second Mrs. Swann obtained a general business license in her name but continued for a short time to operate under the first Mrs. Swann’s beer license. The ABC Board then informed her that, because the first Mrs. Swann’s license had expired upon her death, she (the second Mrs. Swann) would have to obtain a beer license from the City of Graysville in her own name.
2) After the death of the first Mrs. Swann and before the second Mrs. Swann’s application for a retail “off premises” beer and wine license, the City amended Ordinance 322 to read, in part, as follows:
“Except that any licensee who has been issued a current, valid license as of April 2, 1979, for the current year, for the sale of intoxicating beverages, malt or brewed, for wine or liquor shall not be prohibited from the sale thereof under said license at said location by virtue of the passage of this ordinance as long as said licensee operates under said license, or the renewal thereof, issued by the said City of Graysville; provided, however, this exception shall apply to the sole licensee within said five hundred (500) feet who was a licensee on April 2, 1979.” (We emphasize the pertinent language added by the amendment.)
On the basis of the new ordinance, the City rejected her application, claiming the language, “this exception shall apply to the sole licensee,” renders this ordinance “decisively distinct” from the ordinance in Harrison v. Buckhalt, 364 So.2d 283 (Ala.1978). The trial Court disagreed and issued a writ of mandamus to compel the City to grant Mrs. Swann’s application. We affirm.
We will not burden the literature with a repetition of the principle set forth in Swann I and the authorities relied upon therein. Suffice it to say that “[pjermitting those licensed at the time [the ordinance] was adopted to continue to sell . . . beer and wine, [and] at the same time refusing Mrs. Swann a license, in the mistaken belief that it was required to both permit those already licensed to continue such sales as well as to renew their licenses, were the operative facts of denial of equal protection to Mrs. Swann.” Swann v. City of Graysville, 367 So.2d 952, 954 (Ala.1979).
The City contends, however, that the problem inherent generally in “grandfather” clauses of this nature has been cured here by the “tightening up” effect of its amendment which limits the renewal of an existing license to one “who was a licensee on April 2, 1979.” According to the City, this establishes a determinable event-the licensee’s death or his ceasing to do business-which eventually will terminate all licensed activities within the proscribed zone.
The fallacy of this argument lies in the very nature of a license to sell intoxicating liquors. There being “no vested or inherent right to sell or otherwise traffic in intoxicating liquors” (Quillan, Municipal Corporations, 3rd Ed., Vol. 6, § 24.172, p. 737), the license expires of its own volition upon the licensee’s death or upon his ceasing to do business. Thus, the language of the amendment adds nothing. This not to say, of course, that the amended ordinance could not have continued all current licenses in effect for the duration of their stated terms or for a reasonable specified time.
Here, as in Harrison, the “grandfather” clause thwarts the purpose of the ordinance by permitting the very activity which it proscribes; thus, its resultant arbitrary classification denied Mrs. Swann equal protection in violation of §§ 1, 6, and 22 of our State Constitution. Harrison v. Buckhalt, 364 So.2d 283 (Ala.1978).
AFFIRMED.
FAULKNER, ALMON, EMBRY and BEATTY, JJ., concur.
TORBERT, C. J., and MADDOX and SHORES, JJ., dissent.
MADDOX, Justice
(dissenting).
In Harrison v. Buckhalt, 364 So.2d 283 (Ala.1978), a “grandfather clause” was held *542 to be unconstitutional because . [t]he purpose, among others of the ordinance . . . to prohibit the retail sale of alcoholic beverages within 600 feet of a church . . . [was] frustrated by the grandfather clause that would never provide for termination of the sale of those prohibited beverages within the stated distance.” Today, the Court invalidates a “grandfather clause,” which, as a matter of law, has a termination date, i. e., the death of the licensee, or the non-renewal of the license by the city governing body, whichever is sooner.
The majority opines: “This is not to say, of course, that the amended ordinance could not have continued all current licenses in effect for the duration of their stated terms.”
The implication of this language, if not the holding, is that a grandfather clause cannot permit licensees to operate within the proscribed zone except “for the duration of their stated terms.” Harrison is certainly not as limiting. In Harrison, the Court said:
“.. . In those cases in which similar grandfather clauses have been upheld, the statute or ordinance, provides for the ultimate elimination of the sale of alcoholic beverages in the prohibited area. See e. g. Eckert v. Jacobs, 142 S.W.2d 374, 378 (Tex.Civ.App. 1940); Commonwealth v. Petri, 122 Ky. 20, 90 S.W. 987, 989 (1906).”
The clear implication of this statement in Harrison is that a “grandfather clause” which provides for “the ultimate elimination of the sale of alcoholic beverages in the prohibited area” would pass constitutional muster. Under the Harrison rationale, the Graysville ordinance is certainly constitutional.
The decision today is especially troubling in view of the recent case from this Court involving a Tuscaloosa city ordinance regulating permits to operate a marina on Lake Tuscaloosa. There, speaking through Mr. Justice Jones, the author of this opinion, the Court opined:
“Bingham’s application for a permit to build a boat dock, launch area, and gasoline pumping station to service boats operating on the lake was denied after a public hearing. The gist of Bingham’s argument is that he is denied equal protection of the law because the City forbids him from doing the very thing others are doing under the grandfather feature of the Ordinance.
“The City, on the other hand, says the Ordinance and its denial of Bingham’s application thereunder is lawful (i. e., not unconstitutional) because it has the right to regulate the use of its own property, and that the City has a right and obligation to protect the health and safety of its citizens by limiting the number of gasoline pumping stations (and thus limiting the boat traffic) on the lake.
“Bingham’s argument is a persuasive one:
“ ‘Our argument in the instant case is based on the classification created- by Subsection (f) of the Ordinance which reads: “This ordinance shall not apply to commercial structures constructed under permit from the City and in operation prior to the 18th day of April 1974.” While we recognize that there is no constitutional' proscription against State treatment of classes of persons in different ways, the different treatment must be rational in order to avoid proscription under the Federal Constitution. McGowan v. Maryland, 366 U.S. 420, 81 S.Ct. 1101, 6 L.Ed.2d 393 (1961). The Ordinance was enacted, by the City’s own admission, to protect the health and safety of the citizens of the City of Tuscaloosa. The Ordinance operated only prospectively. It would appear to be totally irrational to allow an ordinance which is based upon health and safety to operate only prospectively leaving existing hazards unaffected. A case directly on point is Standard Oil Company v. City of Gadsden, et al, 263 F.Supp. 502 (D.C. 1967). In that case Judge Grooms stated at page 507:
‘ “An ordinance attempted to be justified as a safety regulation which operates only prospectively leaving existing *543 hazards unaffected, creates an arbitrary classification and cannot be allowed to stand.”
‘Quoted in the above case is Standard Oil Company of New Jersey v. City of Charlottesville, 42 F.2d 88 (4th Cir. 1930). In that case the Court stated that:
‘ “A classification manifestly has no such reasonable relation where it forbids one person to carry on the same business on the grounds that it is dangerous to the community, and allows another person similarly situated to carry on the same business simply because he happens to be engaged in it at the time of the passage of the ordinance .... So far as the public safety is concerned, it can make no possible difference that the business was being carried on at the time of the passage of the ordinance.”
‘It would seem that this case is directly on point and should bear considerable weight on the Court’s decision in the present case. The Alabama Supreme Court appears to be in agreement as evidenced by Swann v. City of Graysville, et al, 367 So.2d 952 (Ala.1979). In that case, the Court reviewed an ordinance which prohibited issuance of new licenses to sell alcoholic beverages within five hundred feet of any church, school, schoolground, public park or public playground, but allowed businesses already in existence and within five hundred feet of such places to renew or obtain reissuances of their licenses to sell alcoholic beverages. The Court struck down the ordinance stating that it infringed upon the applicant’s right to equal protection of the law. The Court there stated that although the ordinance was a proper exercise of the City’s power that power could not be exercised in an arbitrary or discriminatory manner.’

“The fallacy of this argument becomes apparent, however, when taken to its logical conclusion. According to its implicit premise, only two courses of action are open to the City: Either

1) Eliminate the ‘grandfather’ clause from the Ordinance; or
2) Decline any regulatory action.
“Surely, no citation of authority is necessary to demonstrate the constitutional invalidity, on general due process grounds, of any regulatory scheme enacted by the City that fails to recognize vested rights of prior interest holders. Thus, a ‘grandfather’ clause is essential to the constitutional validity of the Ordinance here challenged. Nor do we believe it can be seriously contended that the City is totally without authority to regulate the nature and extent of marine activity on its public lake.
“The question, then, is whether the legislatively imposed conditions and restrictions are rationally related to the purpose of the Ordinance. We think they are. While clearly there is a point beyond which the quality and quantity of marine traffic on the lake will exceed health and safety standards, it is an erroneous assumption that the ‘grandfather’ clause leaves ‘existing hazards unaffected.’ Consequently, the City is legally vested with authority to establish and maintain safety and health standards with respect both to the public recreational use of the lake and to the primary use of its water for domestic consumption. This authority includes, of course, regulation of the commercial activities of those operators ‘grandfathered’ in.”
Bingham v. City of Tuscaloosa, 383 So.2d 542 (Ala.1980).
I can see no difference between a city’s right, acting pursuant to its police power, to . allow a person to continue a marina while prohibiting others from doing so, as in Bingham, and permitting a sole licensee to be “grandfathered” in, as is true here. Of course, a city, acting under the guise of regulation, cannot effect an unlawful discrimination, but there is no evidence of any purposeful discrimination on the part of the City presented in this case.
Additionally, states have broad power to regulate the traffic in intoxicating liquors.
It is well settled that, pursuant to the provisions of the Twenty-first Amendment *544 to the United States Constitution, the states are given broad regulatory powers over the possession, sale and distribution of intoxicants within their territories. Joseph E. Seagram & Sons, Inc. v. Hostetter, 384 U.S. 35, 86 S.Ct. 1254, 16 L.Ed.2d 336 (1966); United States v. Frankfort Distilleries, Inc., 324 U.S. 293, 65 S.Ct. 661, 89 L.Ed. 951 (1945). These powers enable the states, to protect the welfare of their citizens, to prohibit or restrict absolutely the importation or distribution of intoxicating liquors. The United States Supreme Court has held that these powers are not limited by the Equal Protection Clause of the Fourteenth Amendment, insofar as any state regulation discriminates, in general, against actions or persons involved in liquor traffic. California v. LaRue, 409 U.S. 109, 93 S.Ct. 390, 34 L.Ed.2d 342 (1972); Ziffrin, Inc. v. Reeves, 308 U.S. 132, 60 S.Ct. 163, 84 L.Ed. 128 (1939). Because the State has such broad powers in regulating intoxicating liquors, I feel that this is an additional reason why no equal protection problem is posed in this case.
TORBERT, C. J., and SHORES, J., concur.