## 17415

The STATE, Appellant v. B. M. KILGORE, Respondent

(103 S. E. (2d) 321)

*Hubert E. Nolin, Esq., County Solicitor,* of Greenville, *for Appellant,*

*Messrs. Leatherwood, Walker, Todd & Mann,* of Greenville, *for Respondent,*

April 17, 1958.

Legge, Justice.

Defendant was convicted in a magistrate's court of having in his possession four bottles of unstamped whiskey, in violation of Section 5 of the Act of March 28, 1956 (Code Supplement, 1957, Section 65-1270). The Greenville County Court reversed, upon the ground that the whiskey was, at the time of defendant's arrest, moving in interstate commerce; and the State has appealed.

The facts are not in dispute. The defendant formerly a resident of Greenville, S. C., is now and has been for some years a resident of the State of Florida. On or about August

11, 1957, he came to Greenville by automobile belonging to and driven by friends who went on to Waynesville, North Carolina, leaving him in Greenville where he was to visit friends until August 22, when he intended to return by train to Florida. On August 17, defendant borrowed an automobile from a friend with whom he was staying in Greenville, and went in it to Hendersonville, North Carolina, where he visited briefly with friends there. On his way back to Greenville that day he stopped at Tryon, North Carolina, and there purchased four bottles of whiskey, each containing four-fifths of a quart. He was stopped in Greenville County, South Carolina, by law enforcement officers, to whom he admitted possession and ownership of the whiskey. He showed them the four bottles, unopened, that he had purchased in Tryon, and to which South Carolina revenue stamps required by Section 65-1267 of the 1952 Code were, of course, not affixed.

Defendant, respondent here, admits that when he was stopped by the South Carolina law enforcement officers he was not en route to Florida. He admits that he intended to return to Florida five days thereafter, and then by train, and not by the automobile in which he was riding at the time of his arrest.

The statute under which respondent was charged declares that "it shall be unlawful for any person to have in possession any bottle or other package containing alcoholic liquor, to which the revenue stamps required by § 65-1267 [Code of Laws of South Carolina, 1952] have not been affixed". Penalty is, for a first offense, fixed at "a fine of one hundred dollars or imprisonment for thirty days".

Since the adoption of the Twenty-first Amendment, each state has power, unfettered by the commerce clause, to regulate or prohibit the importation of intoxicating liquor for delivery or use within its borders. *One Hundred Second Cavalry Officers' Club v. Heise,* 201 S. C. 68, 21 S. E. (2d) 400; *Finch & Co. v. McKittrick,* 305

U. S. 395, 59 S. Ct. 256, 83 L. Ed. 246; *Ziffrin Inc., v. Reeves,* 308 U. S. 132, 60 S. Ct. 163, 84 L. Ed. 128. Independently of the Twenty-first Amendment, it may, without offending the commerce clause, impose reasonable regulations with regard to the transportation of intoxicating liquor through its territory from one neighboring state to another. *Duckworth v. State of Arkansas,* 314 U. S. 390, 62 S. Ct. 311, 86 L. Ed. 294, 138 A. L. R. 1144; *Carter v. Commonwealth of Virginia,* 321 U. S. 131, 64 S. Ct. 464, 88 L. Ed. 605.

In the case at bar the admitted facts are not reasonably susceptible of inference that the whiskey was in interstate commerce at the time of respondent's arrest. Respondent's journey from Tryon to Greenville was not an integral part of its continuous transportation from North Carolina to Florida; its intended stopover in Greenville could not reasonably be considered as a delay necessarily incident to, and therefore essentially a part of, such transportation. The leading case of *Coe v. Town of Errol,* 116 U. S. 517, 6 S. Ct. 475, 477, 29 L. Ed. 715, was concerned with the right of the Town of Errol, New Hampshire, to impose a tax on logs that had been hauled during the previous winter from a location in that state and placed in and near a stream in the Town of Errol, to be thence floated down the Androscoggin River into the state of Maine, there to be manufactured and sold. Discussing the applicability of the commerce clause to that situation, the court said:

"Does the owner's state of mind in relation to the goods,—that is, his intent to export them, and his partial preparation to do so,—exempt them from taxation? This is the precise question for solution.

"This question does not present the predicament of goods in course of transportation through a state, although detained for a time within the state by low water or other causes of delay, as was the case of the logs cut in the state of Maine, the tax on which was abated by the supreme court of New Hampshire. Such goods are already in the course

of commercial transportation, and are clearly under the protection of the constitution. And so, we think, would the goods in question be when actually started in the course of transportation to another state, or delivered to a carrier for such transportation. There must be a point of time when they cease to be governed exclusively by the domestic law, and begin to be governed and protected by the national law of commercial regulation, and that moment seems to us to be a legitimate one for this purpose, in which they commence their final movement for transportation from the state of their origin to that of their destination. * * * such goods do not cease to be part of the general mass of property in the state, subject, as such, to its jurisdiction, and to taxation in the usual way, until they have been shipped, or entered with a common carrier for transportation, to another state, or have been started upon such transportation in a continuous route or journey".

By like reasoning, grain in transit from southern and western states to eastern cities, which had been removed from cars by its owner and placed in his private grain elevator in Chicago, was held taxable by the State of Illinois although it was the owner's intention to forward it promptly, after inspection and weighing, according to the shipping contracts. *Bacon v. People of State of Illinois,* 227 U. S. 504, 33 S. Ct. 299, 57 L. Ed. 615.

> Excepting such interruption as may be "due to the necessities of the journey or·for the purpose of safety and convenience in the course of the movement", continuity of transit from one state to another or to a foreign country is essential to preclude a valid exercise of the taxing or regulatory powers of an intermediate state with regard to personal property within its borders. *Carson Petroleum Co. v. Vial,* 279 U. S. 95, 49 S. Ct. 292, 73 L. Ed. 626; *State of Minnesota v. Blasius,* 290 U. S. 1, 54 S. Ct. 34, 78 L. Ed. 131; *Independent Warehouses v. Scheele,* 331 U. S. 70, 67 S. Ct. 1062, 91 L. Ed. 1346.

In the instant case the whiskey was not in movement through this state at the time of respondent's arrest.

Admittedly it was to be held in Greenville not in necessary delay or accommodation to the means of its transportation from North Carolina to Florida. It was therefore, at the time before stated, not within the protection of the commerce clause.

Respondent testified at his trial, as the County Judge mentioned in his order, that for the past several years he has had to use whiskey constantly for medicinal purposes, and that under the law of Florida one is permitted to bring into that state four-fifths of a gallon of whiskey without any revenue stamps affixed thereto. But these matters are irrelevant to the issue of his guilt. The statute being within the police power of the state and, in the circumstances, not within the scope of the commerce clause, his offense was complete when he violated its provisions, regardless of motive or intent. *State v. Manos,* 179 S. C. 45, 183 S. E. 582.

Reversed.

STUKES, C. J., and TAYLOR, OXNER and MOSS, JJ., concur.