19399

D. M. WINTER, Jr., as Licensee for The Pirate's Cove and The Capital Cabana Motor Inn, Columbia, South Carolina, Appellant, v. S. J. PRATT et al., Respondents.

(189 S. E. (2d) 7)

*Messrs. Kermit S. King,* and *Donald W. Tyler,* of *King & Brooks,* Columbia, *for Appellant,*

*Messrs. Daniel R. McLeod, Atty. Gen., C. T. Goolsby, Jr., Alexander S. Macaulay,* and *Joel E. Gotlieb, Asst. Attys. Gen.,* of Columbia, *for Respondents,*

April 6, 1972.

*Per Curiam:*

The appellant owns and operates The Capital Cabana Motor Inn in Columbia. Its lounge, called The Pirate's Cove, was issued a beer and wine permit and a possession and consumption permit by the South Carolina Alcoholic Beverage Control Commission. The beer and wine permit allowed The Pirate's Cove to sell beer and wine. The possession and consumtpion permit allowed customers to drink their own alcoholic beverages on the premises.

The appellant was charged with selling liquor in violation of the statutory law and the permits. After a hearing was held the ABC Commission found the appellant guilty and issued its order suspending both the beer and wine permit and the possession and consumption permit, but allowing the payment of a fine in lieu of the suspension. Appeal was first had to the Richland County Court, which affirmed the action of the Commission. Appellant now asks this Court to reverse both the Commission and the lower court.

The facts of which the dispute arises are as follows:

On the evening of May 12, 1970, two investigators from the South Carolina Alcoholic Beverage Control Commission went to The Pirate's Cove to check for possible violations of law. Upon entering the premises a waitress seated them and directed their attention to a piece of paper lying on top of their table. The paper read:

"NOTICE TO ALL OUR FRIENDS AND CUSTOMERS:

Under the present Law, alcoholic beverages over a certain alcoholic percent cannot be sold in South Caorlina by the drink. The PIRATE'S COVE policy is not to intentionally

break any laws of this state, therefore, the PIRATE'S COVE does not and will not sell you a drink over the specified alcoholic content, however, to all of our good friends and customers, in the sole discretion of the management and/or bartender, we may, upon your request, give you a drink without renumeration; in other words, this gift is our appreciation for your patronage.

"All set ups during Happy Hour between 5:00 P. M. and 7:00 P.M. are fifty (50¢) cents; the same as it has been ever since the Brownbagging laws were passed. After show time, the set ups are seventy-five (75¢) cents, this also is the same price charged since the law was passed. The set ups are the same price regardless of whether you bring your beverage or whether we in our discretion, give you your alcoholic beverage. We will mix your drinks for you only upon your request. Because of the complication involved. Martinis will not be made except in cases where you bring your own mix, however, such drinks as Tom Collins and Vodka Collins will be brought to you without the alcoholic content, at which time you may mix it yourself or request the attendant to mix it for you in cases where the alcoholic beverage is free.

"*It is to be Clearly Understood that* YOU ARE CHARGED ONLY FOR THE SETUPS. The charge for the setups, as we have stated before, is the same price always charged since the brownbagging laws were passed which is necessary in order to maintain the service, the atmosphere, the band and the shows.

### THE PIRATE'S COVE"

After reading the above notice and assuring the waitress that they understood it, the investigators ordered vodka and orange juice and bourbon and coke. The waitress soon returned with a glass of orange juice, a glass of coke, a small shot glass of vodka, and a small shot glass of bourbon, for which she was paid one dollar fifty cents ($1.50). A third

investigator soon entered the lounge. The three identified themselves and proceeded to write up a violation.

The statutes alleged to have been violated read as follows:

"It shall be unlawful for any person to . . . sell . . . any alcoholic liquors . . . except in accordance with the provisions of this chapter . . . " S. C. Code Ann. § 4-91.

"No holder of a permit authorizing the sale of beer or wine or any servant, agent or employee of the permittee shall knowingly do any of the following acts upon the licensed premises covered by such holder's permit:

. . . .

"(5) Permit any act . . . which constitutes a crime under the laws of this State . . .

. . . .

"A violation of any of the foregoing provisions shall be a ground for the revocation or suspension of such holder's permit. *Id.* § 4-215."

It is the appellant's chief contention that, under the facts of this case, a *gift* transaction and not a sale occurred, and that therefore there has been no violation. Under the view we take, this argument does not warrant a lengthy discussion.

In our view, appellant's purported "gift" of liquor to his customers was merely a subterfuge. "In determining whether a transaction constitutes a sale in violation of law, the courts will refuse to countenance any trick or subterfuge intended to evade the law . . . " 45 Am. Jur. (2d) Intoxicating Liquors § 239.

"In any case, where a sale or gift of liquor would be contrary to law, the courts will discountenance any trick, artifice, or subterfuge intended to evade its terms. No matter what the disguise or pretense, it is enough to sustain a conviction if liquor was actually sold or given in violation of the law, and under the statutory provisions of some juris-

dictions a sale by trick, device, or subterfuge is declared illegal." 48 C. J. S. Intoxicating Liquors § 244.

The true nature of the transaction with which we ■ are concerned was a sale. Consideration passed to the appellant in the form of the money which was paid to the waitress.

The finding of the Commission that a sale took place is supported by the evidence.

Appellant also challenges the constitutionality of our ■ statutes. First, he contends that penal statutes must clearly state those acts for which a penalty may be imposed. Our laws, he says, do not give clear warning that appellant's conduct would be violative thereof and are therefore lacking in the constitutional requirement of definiteness.

Appellant has challenged the constitutionality of our statutes regulatng the use of liquor once before. *Pirate's Cove, Inc. v. Strom*, 249 S. C. 270, 153 S. E. (2d) 900 (1967). In that case we pointed out, and we here reiterate, that:

"The provisions of [Section 4-91], with respect to sales, make it unlawful for *any person* to *sell* alcoholic liquors in this State except . . . 'in accordance with the provisions of this chapter.' This section is a part of Chapter 1 of the Alcoholic Beverage Control Act. Section 4-31 of that chapter provides for the licensing by the State of manufacturers, wholesalers, and retailers of alcoholic liquors; and, unless a person is so licensed by the State, he cannot sell alcoholic liquors in accordance with the provisions of Chapter 1, to which reference is made in Section 4-91. . . . "

Under our Constitution " . . . The General Assembly may license persons or corporations to manufacture and sell retail alcoholic liquors or beverages within the State under such rules and restrictions as it deems proper; . . . *Provided,* That no license shall be granted to sell alcoholic beverages in

less quantities than one-half pint . . . " South Carolina Constitution, Art. 8, § 11. We believe that these provisions of the Constitution, together with Sections 4-31 (relative to issuing licenses) and 4-91 of the Code, (quoted above) afforded clear warning that appellant's conduct was wrongful. If any doubt existed, the plain language of our opinion in *The Pirates' Cove, Inc.* case, *in which appellant was directly involved,* should have eradicated it. The very fact that liquor was dispensed in this most unusual way indicates that appellant understood the law he attempted to evade.

Appellant next suggests that our statutory scheme is unconstitutional because arbitrary. Liquor may be sold in South Carolina in quantities of one-half pint or more. Public possession and consumption are permitted and such practice ("brown bagging") is wide. Second retail sales of small quantities of liquor are, however, impermissible. Appellant argues that this scheme compels one to purchase a greater quantity of liquor. He concludes that this is more conducive to public evil in that excessive consumption is facilitated.

The statutory scheme, if unwise, is not arbitrary. Indeed it is consistent with the people's mandate as set forth in the Constitution of South Carolina. The Constitution, Article 8, § 11, forbids the General Assembly to license one to sell in quantities less than one-half pint. Section 4-78 of the Code prohibits retailers from selling in "less quantities than one-half pint." Neither our Constitution nor our statute transgresses the due process clause of the Federal Constitution.

The broad power of the State to enact regulations concerning intoxicating liquor is alluded to further on in this opinion. "The scope and extent of such regulations depend solely upon the judgment of the lawmakers, with the wisdom of which the judiciary has no concern. . . . " 45 Am. Jur. (2d) Intoxicating Liquors § 24 [citing *Purity Extract & Tonic Co. v. Lynch,* 226 U. S. 192, 33 S. Ct. 44, 57 L. Ed.

184; *Crowley v. Christensen*, 137 U. S. 86, 11 S. Ct. 13, 34 L. Ed. 620; *State ex rel. George v. Aiken*, 42 S. C. 222, 20 S. E. 221]. Mr. Justice Stewart said in *Joseph E. Seagram & Sons, Inc. v. Hostetter*, 384 U. S. 35, 86 S. Ct. 1254, 16 L. Ed. (2d) 336 (1966):

" . . . Under the system of government created by our Constitution, it is up to legislatures, not courts, to decide on the wisdom and utility of legislation. There was a time when the Due Process Clause was used by this Court to strike down laws which were thought unreasonable, that is, unwise or incompatible with some particular economic or social philosophy. . . . The doctrine . . . that due process authorizes courts to hold laws unconstitutional when they believe the legislature has acted unwisely . . . has long since been discarded. We have returned to the original constitutional proposition that courts do not substitute their social and economic beliefs for the judgment of legislative bodies, who are elected to pass laws. . . " [Quoting Mr. Justice Black in *Ferguson v. Skrupa*, 372 U. S. 726, 83 S. Ct. 1028, 10 L. Ed. (2d) 93.]

Appellant's next argument is that South Carolina's statutory scheme unconstitutionally burdens interstate commerce and denies him equal protection of the law. His motel, he argues, is involved in interstate commerce. He points out that motels in the neighboring state of Georgia offer to their patrons the facilities of cocktail lounges and restaurants in which mixed drinks may be served, while under our laws such drinks may not be sold. The net effect, he contends, is to render South Carolina's motels inferior and inadequate, in terms of facilities offered, with the result that the traveling public rejects such motels in favor of those in Georgia.

South Carolina's statutes might, indeed, have an unfortunate and undesirable effect on appellant's business. This does not, however, render these statutes impermissively burdensome upon interstate commerce. Consider, for ex-

ample, the fact that many potential patrons of Arizona motels might be enticed to patronize motels in nearby Las Vegas, Nevada, which offers the facilities for legalized gambling. The fact that the Arizona motel operators might lose this business does not render Arizona's statutes prohibiting gambling unconstitutional. Likewise, the fact that Maryland permits harness racing does not mean that neighboring Virginia cannot choose to prohibit it. Similar situations are not uncommon.

The purpose of the Commerce Clause is, among other things, to "protect commercial intercourse from invidious restraints. . . ." *Pennsylvania v. West Virginia*, 262 U. S. 553, 43 S. Ct. 658, 67 L. Ed. 1117 (1923). And "the Twenty-first Amendment sanctions the right of a state to legislate concerning intoxicating liquors brought from without, unfettered by the Commerce Clause." *Zffrin, Inc. v. Reeves*, 308 U. S. 132, 60 S. Ct. 163, 84 L. Ed. 128 (1939).

The power of the states to regulate intoxicants is broad. See 45 Am. Jur. (2d) Intoxicating Liquors § 34; 48 C. J. S. Intoxicating Liquors § 33; 15 C. J. S. Commerce § 99. We do not feel that South Carolina's enactments on this subject are unconstitutional.

Finally, appellant points out that, under Section 4-83 of our Code, the sale of alcoholic liquor by railroads and airlines to their passengers on interstate trains or aircraft is permitted, and that these carriers are exempt fom the restrictions of our statutes. This, he argues, denies him equal protection of the law.

It may be true, as appellant contends, that Section 4-83 is merely a statutory recognition that failure to afford this exemption to common carriers would be violative of the Commerce Clause. It does not necessarily follow, though, that failure to grant this exemption to motels and hotels violates this part of our Constitution.

Discrimination results only where like things are treated differently, or where different things are treated alike. The differences between inkeepers and common carriers are obvious. The liquor which appellant would serve to his customers has come to rest in this State. The liquor served aboard interstate trains and aircraft, and the passengers themselves, have not. *Cf. State v. Kilgore,* 233 S. C. 6, 103 S. E. (2d) 321 (1958). We see no denial of equal protection in our statutory scheme.

The order of the lower court is

Affirmed.

BUSSEY, J., did not participate.