Pat STEVERSON, Plaintiff,

v.

CITY OF VICKSBURG, MISSISSIPPI,
Defendant.

No. 5:93–CV–138(Br).

United States District Court,
S.D. Mississippi,
Western Division.

March 7, 1994.

Matthew M. Moore, Jackson, MS, for plaintiff.

Nancy A. Davis, David W. Ellis, Vicksburg, MS, for defendant.

## BENCH OPINION

BRAMLETTE, District Judge.

This cause came on for trial before the Court without a jury on December 13 and 14, 1993. The Court, having fully considered the testimony and documentary evidence presented by both parties at trial, the arguments of counsel, and the applicable law, and being otherwise fully advised in the premises, makes the following findings of fact and conclusions of law pursuant to Rule 52 of the Federal Rules of Civil Procedure. In the event that this case is later transcribed for appeal or other purposes, the Court reserves the right to edit or amend this opinion. In so doing, however, the Court will not alter the substance of the findings or result.

## BACKGROUND

This case presents a First Amendment and Equal Protection[1] challenge to an adult entertainment zoning ordinance which effectively bans adult cabarets featuring live nude dancing throughout the City of Vicksburg, Mississippi. Plaintiff, Pat Steverson, purchased a leasehold interest in a building located at 1101 Mulberry Street for the purpose of presenting adult entertainment in the form of topless dancing. Thereafter, the City of Vicksburg passed Ordinance 93–37 which prohibits Plaintiff from using said location for this purpose. As a result of the City's actions, Plaintiff instituted the present action against the City pursuant to 42 U.S.C. § 1983, charging violations of her First, Fifth, and Fourteenth Amendment rights. (Compl. at 1, ¶ 1).

Specifically, Plaintiff seeks declaratory relief that the City's actions in prohibiting Plaintiff from providing entertainment in the form of topless dancing at 1101 Mulberry Street, through Ordinance 93–37, is an un-

constitutional infringement of her First Amendment right to free expression. (Pretrial Order, at 2). Secondly, Plaintiff seeks declaratory relief that the City's zoning ordinance is unconstitutional inasmuch as it does not provide reasonable alternative avenues of communication. (*Id.*) In addition, Plaintiff seeks a permanent injunction restraining Defendant from future attempts to prohibit protected speech activity at 1101 Mulberry Street, and Plaintiff seeks attorney's fees against the City pursuant to 42 U.S.C. § 1988. (*Id.*) Finally, Plaintiff seeks an award of money damages and interest for losses caused by the enforcement of the City's ordinance. (*Id.*)

On or about October 18, 1993, Plaintiff filed a motion for preliminary injunction pursuant to Rule 65 of the Federal Rules of Civil Procedure. After hearing oral argument, this Court denied Plaintiff's motion, and expedited a trial setting of Plaintiff's case for December 13, 1993. Additionally, the Court reserved ruling on Defendant's Rule 11 motion for sanctions against Plaintiff's counsel.

Thereafter, on said trial date, and at the close of all the evidence, the Court granted Defendant's Rule 50 motion as to Plaintiff's equal protection claim. The remaining issues were taken under advisement.

## FINDINGS OF FACT

During March of 1993, the City of Vicksburg, through the Mayor and Board of Aldermen, directed the City Attorney to research the possibility of enacting an adult entertainment ordinance. The City attorney's office compiled a packet of materials for review by the Planning Commission, including a New Hanover County study, case law, and a synopsis of adverse secondary effects from sexually oriented businesses. The materials were presented to and discussed by the Planning Commission for the City of Vicksburg at a series of meetings in early August, 1993.[2] On September 23, 1993,

---

1. Plaintiff argues that the City violated her equal protection rights by granting a license to Hill City News, an existing adult entertainment establishment, and refusing Plaintiff's application.

The Court, however, granted Defendant's Rule 50 Motion on this issue.

2. During the summer of 1993, the entire makeup of the Vicksburg Board of Aldermen changed.

the Zoning Board of Appeals met to vote on a possible ordinance recommendation to the City. The Planning Commission and Zoning Board are composed of the same individuals.

Acting on the unanimous recommendation of the Zoning Board, the Mayor and Aldermen enacted an initial version of the Ordinance on August 10, 1993. The Mayor and Aldermen subsequently amended the Ordinance on September 24 and October 4, 1993.[3] Each version contained an effective immediately clause.

Ordinance 93–37 prohibits adult entertainment businesses, defined as either an adult arcade, adult bookstore, adult cabaret, or an adult motion picture theater, from locating within 1,000 feet of a church, park, library, day care facility, residential neighborhood, school, or another adult entertainment business. (Ord. 93–37 at 2–3, Part I Zoning). The Ordinance further details licensing requirements and regulatory provisions for said businesses. (Ord. 93–37 at 6–15, Part II Licensing). Specifically, Ordinance 93–37 imposes a non-refundable $1,200.00 application/licensing fee in order to defray costs of enforcement. (Ord. 93–37 §§ 1010(E), 1011(E)). Moreover, Ordinance 93–37, through § 1014(A)(1)(g) and § 1014(A)(1)(q), prohibits partial or complete nudity in any adult entertainment establishment.[4] Finally, of importance to this litigation, Ordinance 93–37 prohibits the sale and or consumption of alcohol beverages, light wine or beer in any adult entertainment business. (Ord. 93–37 § 1014(B)).

The evidence establishes that the City of Vicksburg is neither densely populated nor commercially overdeveloped. It has a population of approximately 27,496 and consists of 22,400 acres, of which, approximately 3,457 acres meet the locational restrictions imposed by Ordinance 93–37 § 1003. This amounts to 16.32% of available land on which an individual could conceivably establish such

a business. Approximately 93 actual sites have been identified, including some on prime commercial property. Moreover, Vicksburg presently has one adult entertainment establishment, identified as Hill City News, and at the time of trial, Plaintiff was the only applicant for an adult entertainment license.

During late July, 1993, the Steversons negotiated a lease for the premises at 1101 Mulberry Street and began to make improvements on the property. Mr. Jim Steverson, Plaintiff's husband, consistently and publicly declared his intentions of opening an establishment at 1101 Mulberry Street featuring entertainment in the form of topless dancing. Moreover, the evidence shows that Mr. Steverson, prior to the July lease negotiations and the subsequent property improvements, had knowledge of the City's plans to enact a zoning ordinance pertaining to adult entertainment, and that such ordinance would prevent the Steversons from operating a topless dancing lounge at 1101 Mulberry Street. Specifically, the proof shows that Mr. Steverson was in attendance at the aforementioned August 10 meeting and actively participated in the discussion pertaining to adult entertainment.

On September 27, 1993, Plaintiff filed an application for an adult entertainment business license for her establishment located at 1101 Mulberry Street, Vicksburg, Mississippi. On September 29, 1993, Plaintiff approached the City and requested the issuance of a privilege license for the sale of beer at 1101 Mulberry Street. Inasmuch as light wine and beer are prohibited in an establishment featuring topless dancing, and since Plaintiff had previously applied for an adult entertainment license in order to feature such entertainment, the City refused said permits. On September 29, 1993, the City denied Plaintiff's application by letter, stating that such application was incomplete.

Thus, such efforts to implement an adult entertainment ordinance were delayed until August.

**3.** Plaintiff claims that the City failed to conform to the requisite formalities incident to proper adoption of Ordinance 93–37. Such claim, however, is outside the scope of Plaintiff's pleadings, and thus, not properly before the Court.

**4.** Although section (g) and (q) prohibits public nudity within adult entertainment establishments, the Court focuses on § (g) inasmuch as said section prohibits nude and semi-nude dancing.

Thereafter, on September 30, 1993, Plaintiff filed a proper application with the City.

Before the City completed its investigation and informed Plaintiff of her grant or denial of an adult entertainment license, Plaintiff filed the present action, on October 7, 1993.[5] Inasmuch as Plaintiff's proposed site location at 1101 Mulberry Street is within 1,000 feet of a residential area and also within 1,000 feet of another adult entertainment business,[6] the City, by letter dated November 12, 1993, timely denied Plaintiff's adult entertainment license application.

Following the hearing on Plaintiff's motion for a preliminary injunction, the City issued Plaintiff a beer permit and occupancy license for her lounge located at 1101 Mulberry Street. Said permit and license, however, prohibits Plaintiff from offering adult entertainment until the resolution of the present litigation. (*See* Agreed Order filed Nov. 11, 1993). Thereafter, on November 12, 1993, Plaintiff opened a lounge at 1101 Mulberry Street, serving light wine and beer pursuant to said permit and occupancy license.

## CONCLUSIONS OF LAW

### I. Constitutional Claims

This controversy exemplifies the tension between two important but divergent interests which have impacted the development of our constitutional jurisprudence. On one hand is a community's role in regulating unacceptable conduct in order to protect morality and preserve the quality of urban life. On the other is an individual's right to express himself or herself without censorship by the majoritarian political process. Thus, as in the case *sub judice*, where government regulation of conduct is challenged on First Amendment grounds, this Court must determine whether the regulation attempts to curtail the intended message of the actor, or whether the restrictions are legitimate attempts to regulate physical conduct for some governmental purpose.

Inasmuch as the City refused to issue Plaintiff an adult entertainment license, Plaintiff claims that Ordinance 93–37 infringes her constitutional right to provide adult entertainment in the form of topless dancing at 1101 Mulberry Street, Vicksburg, Mississippi. Although the Supreme Court has ruled that nude dancing, as sexual expression, is afforded limited First Amendment protection, *Barnes v. Glen Theatre, Inc.*, 501 U.S. 560, 565, 111 S.Ct. 2456, 2460, 115 L.Ed.2d 504 (1991), the Court has also upheld the State's power to regulate the presentation of such nude dancing. For example, a government may impose reasonable time, place, and manner restrictions on protected expression. *See Renton v. Playtime Theatres, Inc.*, 475 U.S. 41, 46–47, 106 S.Ct. 925, 928–29, 89 L.Ed.2d 29 (1986). Similarly, the State may regulate the nonexpressive conduct, such as public nudity, for reasons unrelated to the suppression of speech. *Barnes v. Glen Theatre, Inc.*, 501 U.S. 560, 565, 111 S.Ct. 2456, 2460, 115 L.Ed.2d 504 (1991) (citing *United States v. O'Brien*, 391 U.S. 367, 88 S.Ct. 1673, 20 L.Ed.2d 672 (1968)). Finally, a government may also regulate nude dancing under the power granted it by the Twenty First Amendment. *California v. LaRue*, 409 U.S. 109, 93 S.Ct. 390, 34 L.Ed.2d 342 (1972).

In the context of these guidelines, this Court evaluates whether the City of Vicksburg, through the adoption and enforcement of Ordinance 93–37, violates Plaintiff's First Amendment right to free expression. Specifically, the Court will evaluate the following aspects of Ordinance 93–37 in conjunction with Plaintiff's constitutional claims: (1) the locational restrictions placed on adult entertainment businesses through its zoning provisions, (§§ 1001, 1002, and 1003); (2) the pro-

---

**5.** Defendant did not raise a "case or controversy" argument against Plaintiff at the time of the preliminary injunction hearing. At such time, all parties believed that Plaintiff's application would be denied. *See* (Prelim.Inj.Tr. at 12).

**6.** Plaintiff is within 1,000 feet of Hill City News. The City received Hill City's completed application prior to Plaintiff's. Inasmuch as Hill City existed prior to the City's new zoning ordinance and could not meet the 1,000 feet restrictions without relocating, the City "grandfathered" said establishment and allowed its continued operation as a nonconforming use. Hill City, however, is required to meet all regulatory and licensing requirements of said ordinance.

hibition of public nudity within all adult entertainment industries, (§ 1014(A)(1)(g); (3) the prohibition of the sale and/or consumption of alcoholic beverages on adult entertainment business premises, (§ 1014(B)); and (4) the licensing provision established for adult entertainment business wherein a $1200.00 license/application fee is required (§§ 1010 and 1011).

## A. Appropriate Legal Standard

 Ordinarily a zoning ordinance passes constitutional muster if it is rationally related to a legitimate state interest and does not preclude all practicable uses of the property. *Basiardanes v. City of Galveston*, 682 F.2d 1203, 1212 (5th Cir.1982). However, different legal standards are applied when zoning schemes intrude upon activity protected by the First Amendment. *Id.* Moreover, ordinances which effectively ban a given type of speech are held to a higher level of judicial scrutiny than those ordinances that merely regulate the time, place, and manner at which the speech can occur. *Renton v. Playtime Theatres, Inc.*, 475 U.S. 41, 106 S.Ct. 925, 89 L.Ed.2d 29 (1986); *Lakeland Lounge v. City of Jackson*, 973 F.2d 1255, 1257 (5th Cir.1992).

### 1. Applicability of *Renton* Time, Place, and Manner Analysis

Relying on the Supreme Court's decision in *Renton v. Playtime Theatres, Inc.*, 475 U.S. 41, 106 S.Ct. 925, 89 L.Ed.2d 29 (1986), the City argues that there is no restriction of First Amendment rights in this case inasmuch as Ordinance 93–37 merely regulates the time, place, and manner of adult entertainment businesses. In *Renton*, the United States Supreme Court upheld a city zoning ordinance that dictated locational restrictions on adult theatres. 475 U.S. at 46, 106 S.Ct. at 928. In so holding, the Court found it significant that the city **did not ban adult theatres altogether,** but merely prohibited their location within 1,000 feet of any residential area, church, park or school. *Id.* (citing *Young v. American Mini Theatres, Inc.*, 427 U.S. 50, 63 n. 18, 78–79, 96 S.Ct. 2440, 2449 n. 18, 2456–57, 49 L.Ed.2d 310 (1976)) (emphasis added).

The Supreme Court determined that inasmuch as the ordinance in question was not aimed at the content of the film shown in adult theatres, but rather at the secondary effects that these establishments imposed on the surrounding neighborhoods, the Court would apply a more deferential test—a content-neutral time, place, and manner standard. The Court noted further that although the regulated establishments presented expressive activity, a deferential standard of review is appropriate because "society's interest in protecting this type of expression is of a wholly different, and lesser, magnitude than the interest in untrammeled political debate." *Id.* at 49 n. 2, 106 S.Ct. at 930 n. 2 (quoting *Young v. American Mini Theatres*, 427 U.S. 50, 70, 96 S.Ct. 2440, 2452, 49 L.Ed.2d 310 (1976)).

Finding the Renton ordinance content neutral, the Court examined the ordinance to determine the substantial nature of the government's interest and the availability of reasonable alternative avenues of communication. *Renton*, 475 U.S. at 50, 106 S.Ct. at 930. First, the Court determined that the City's asserted interest in preventing crime, maintaining property values, and preserving the quality of the city's neighborhoods was important and substantial. *Id.* The Court also found that the city was entitled to rely on the experiences and studies of other cities to demonstrate that adult businesses can have harmful effects on the community. *Id.* at 51, 106 S.Ct. at 930. As long as the city relied on evidence which it reasonably believed was relevant to the problem, the city could base its ordinance on independent evidence generated by other cities. *Id.* The regulation and/or the elimination of these secondary effects constituted a sufficient government interest. *Id.*

Finally, the Court evaluated whether the Renton Ordinance provided reasonable alternative avenues of communication. Noting that more than 5% of the city's land area was available for potential adult entertainment sites, the Court found that Renton had sufficiently provided reasonable alternative avenues of communication. *Id.* at 53, 106 S.Ct. at 931.

■ Turning to the case at bar, the Court's first task is to determine whether the *Renton* time, place, and manner analysis is applicable to Ordinance 93–37. At first glance, the resolution of this case seems largely dictated by *Renton* inasmuch as the Vicksburg ordinance appears to disperse adult entertainment establishments through locational restrictions. However, a careful reading of Ordinance 93–37 reveals that the very conduct which defines a business· as an adult cabaret is prohibited by a regulatory provision forbidding public nudity in such establishments. (Ord. 93–37 § 1014(A)(1)(g)). In other words, the City, through Ordinance 93–37, places a citywide ban on adult entertainment featuring live nude and semi-nude dancing.

For example, if Plaintiff were to present entertainment in the form of topless dancing, it would be classified as an "adult cabaret" pursuant to Ordinance 93–37 § 1003(C). An "adult cabaret" is defined as a "nightclub, bar, restaurant, theater, or similar establishment which regularly features live performances which are characterized by the exposure of 'specified anatomical areas' or by 'specified sexual activities.'" (Ord. 93–37 § 1003(C)). Section 1003 defines " 'Specified Anatomical Areas' as less than completely or opaquely covered ... portion of the female breast encompassed within an area falling below the horizontal line one would have to draw to intersect a point immediately above the top of the areola. The definition shall include the entire lower portion of the female breast." (Ord. 93–37 § 1003(E)(1)). Such a classification subjects Plaintiff to locational restrictions set forth in § 1002.

However, pursuant to Section 1014(A)(1)(g), "no employee or entertainer shall at any time be unclothed or in such less than opaque attire, ... so as to expose to view any portion of the breast below the top of the areola...." Thus, reading Ordinance 93–37's locational zoning provisions in conjunction with § 1014(A)(1)(g) indicates that the City has chosen to regulate adult cabarets to the point of banning their existence.[7] Accordingly, Ordinance 93–37 presents a different issue than the Court faced in *Renton* itself. Inasmuch as Vicksburg has enacted a law which bans adult cabarets rather than disperses them, and thus does not provide reasonable alternative avenues of communication, the City's ordinance cannot be sustained as a reasonable time, place and manner regulation. *Renton*, 475 U.S. at 46, 106 S.Ct. at 928; *Schad v. Mount Ephraim*, 452 U.S.· 61, 71, 101 S.Ct. 2176, 2184, 68 L.Ed.2d 671 (1981); *see also Basiardanes*, 682 F.2d at 1214.

## 2. Applicability of *Barnes* standard

■ Having ruled that Ordinance 93–37 cannot be sustained as a valid time, place and manner regulation under *Renton*, the Court must now determine the proper constitutional test to apply to Ordinance 93–37, and then determine whether the ordinance in question survives such scrutiny. In a pre-*Renton* case, the Fifth Circuit evaluated a Galveston zoning ordinance under a heightened scrutiny standard inasmuch as the ordinance in question banned adult theatres outright from much of the city. *Basiardanes*, 682 F.2d at 1214 (citing *Schad v. Borough of Mt. Ephraim*, 452 U.S. 61, 101 S.Ct. 2176, 68 L.Ed.2d 671 (1981)).[8] The Court noted that if the

---

**7.** The Court notes that Ordinance 93–37 also classifies motion pictures, films, video cassettes, etc. which emphasize the depiction or description of "specified sexual activities" or "specified anatomical areas" as adult cabarets. Thus, the City argues that Ordinance 93–37, through § 1014(A)(1)(g) does not ban adult cabarets outright. The Court finds that such argument· lacks merit inasmuch as such definition is identical to the City's definition of Adult Motion Picture Theatres. (Ord. 93–37 § 1003(D)). Moreover, the issue is whether the City can ban adult cabarets featuring topless dancing, not whether the City

can include motion pictures in its definition of an adult cabaret.

**8.** Based on this "outright ban," the Fifth Circuit in *Basiardanes* declined to apply the standard set forth in *Young v. American Mini Theatres, Inc.* 427 U.S. 50, 96 S.Ct. 2440, 49 L.Ed.2d 310 (1976). The Court notes, however, that the Supreme Court resolved *Renton* based on *American Mini Theatres*, 475 U.S. at 45–46, 106 S.Ct. at 927–28, and thus the Pre-*Renton* posture of *Basiardanes* is not detrimental to the applicability of *Schad v. Borough of Mt. Ephraim* to the instant case.

ordinance were to be construed as a valid time, place, and manner regulation, the court would not apply the strict scrutiny test of *Schad v. Borough of Mt. Ephraim, supra. Basiardanes*, 682 F.2d at 1213 n. 7. *Schad* requires the Court to evaluate whether Ordinance 93–37 advances a substantial government interest, is narrowly tailored to achieve such an interest, and cannot serve said interest by less intrusive means. *Schad*, 452 U.S. at 68–70, 101 S.Ct. at 2182–84.

However, this is not the end of the Court's inquiry. This Court recognizes that the Fifth Circuit's decision in *Basiardanes*, and its reliance on *Schad v. Mt. Ephraim*, was decided prior to the Supreme Court decision in *Barnes v. Glen Theatre*, 501 U.S. 560, 111 S.Ct. 2456, 115 L.Ed.2d 504 (1991). In *Barnes*, 501 U.S. at 565, 111 S.Ct. at 2460, the Supreme Court upheld an Indiana Public Indecency Statute banning public nudity, even though the ordinance had the effect of prohibiting all nude dancing. The Court reasoned that when " 'speech' and 'nonspeech' elements are combined in the same course of conduct, a sufficiently important governmental interest in regulating the nonspeech element can justify incidental limitations on First Amendment freedoms." *Id.* (quoting *United States v. O'Brien*, 391 U.S. 367, 376, 88 S.Ct. 1673, 1678, 20 L.Ed.2d 672 (1968)). Accordingly, it is the City's position that Section 1014(A)(1)(g)'s prohibition of total and partial nudity within adult entertainment establishments is constitutional in light of the Supreme Court's decision in *Barnes v. Glen Theatre, Inc.*, 501 U.S. 560, 111 S.Ct. 2456, 115 L.Ed.2d 504 (1991).

Based on the recent developments on this issue in the Supreme Court, this Court will apply the *Barnes* analysis to the present case, and will address the narrow issue of whether the City, through its zoning ordinance, can prohibit total or partial nudity within adult entertainment businesses.

### 3. Application of *Barnes* to Ordinance 93–37

The Court notes at the outset that this type of analysis is more appropriate if Plaintiff were challenging Ordinance 93–29, Vicksburg's public indecency statute. Both par-

ties have stipulated that the constitutionality of Ordinance 93–29 is not properly before this Court. Accordingly, any challenge to the citywide ban on public nudity, and how such ban affects the city's adult entertainment zoning ordinance must be saved for another day.

■ Additionally, the Court finds that the case at bar does not involve a clear application of *Barnes*. First, the Supreme Court in *Barnes* upheld the Indiana law inasmuch as the law banned the asserted evil of public nudity, **as a whole,** in an effort to promote societal order and morality. The law was not specifically directed at expressive conduct, and the fact that it so happened to affect expressive nudity was merely incidental to its facial neutrality. The Vicksburg Ordinance, however, is a zoning ordinance which only forbids nudity in the adult entertainment industry. Secondly, the ordinance before the Court today is more restrictive inasmuch as the dancers/entertainers must wear the equivalent of a bikini top and bottom, whereas the dancers in *Barnes* were only required to wear pasties and g-strings. In analyzing the Indiana law, the *Barnes* Court applied the four part test first enunciated in *United States v. O'Brien*, 391 U.S. 367, 377, 88 S.Ct. 1673, 1679, 20 L.Ed.2d 672 (1968). Under this test, government regulation of conduct composed of speech and nonspeech elements is "sufficiently justified" if the following criteria are met:

> [1] if it is within the constitutional power of the Government; [2] if it furthers an important or substantial government interest; [3] if the governmental interest is unrelated to the suppression of free expression; and [4] if the incidental restriction on alleged First Amendment freedoms is no greater than is essential to the furtherance of that interest.

*Barnes*, 501 U.S. at 567, 111 S.Ct. at 2461 (quoting *United States v. O'Brien*, 391 U.S. 367, 376–77, 88 S.Ct. 1673, 1679, 20 L.Ed.2d 672 (1968).

■ The Court first addresses two threshold inquiries under *O'Brien*: (1) whether the City of Vicksburg has the authority to adopt a zoning ordinance regulat-

ing adult entertainment establishments, and (2) whether the city adopted such regulations in order to address a substantial government interest. It is well settled that a municipality has broad powers to adopt zoning regulations to limit the areas in which adult entertainment facilities may locate. *Star Satellite, Inc. v. City of Biloxi,* 779 F.2d 1074, 1079 (5th Cir.1986). In addition to specific delegation of zoning authority, municipalities have broad regulatory authority over public health, welfare, and morals by virtue of their police powers. U.S. Const. amend. X, *Harper v. Lindsay,* 616 F.2d 849 (5th Cir.1980).[9] Moreover, as stated in Part B, *infra,* the City has a substantial interest in placing locational restrictions on adult entertainment in order to combat proven harmful secondary effects. Finally, it is also well established that the regulation of nudity in public places advances a substantial governmental interest in maintaining order and morality. *Barnes,* 501 U.S. at 567, 111 S.Ct. at 2461. Thus, the issue before the Court is whether Ordinance 93–37, through § 1014(A)(1)(g), actually serves these well established and substantial interests or is merely a pretext to suppress Plaintiff's free expression.

■ In evaluating element three of the *O'Brien* test, the Court cannot find any evidence that the City was targeting Plaintiff's intended message with the adoption of Ordinance 93–37. Nowhere in the ordinance itself or from the testimony at trial can the Court find that the City had an interest in regulating the communicative aspects of nude dancing. Ordinance 93–37 § 1003(C) defines an adult cabaret as those establish-

ments which regularly feature live performances by the exposure of "specified anatomical areas," not as those establishments which regularly feature erotic dancing. Ordinance 93–37 § 1014(A)(1)(g) prohibits nudity by employees or entertainers at all times, not solely when an entertainer is performing. In essence, "[p]ublic nudity is the evil the state seeks to prevent, whether or not it is combined with expressive activity." *Barnes,* 501 U.S. at 571, 111 S.Ct. at 2463. Thus, the Court finds that § 1014(A)(1)(g) is not aimed at proscribing nude expression within the adult entertainment industry, but rather is targeting all nudity within adult entertainment establishments, regardless of whether the nudity is combined with dancing in order to convey a message.

■ Finally, the Court evaluates whether the City's ordinance is narrowly tailored so that the incidental restriction on alleged First Amendment freedoms is no greater than is necessary to achieve such stated interests. In *Barnes,* the Supreme Court only required that the erotic dancers wear a scant amount of clothing, such as pasties or g-strings. In the case at bar, however, the City restrictions are much more intrusive inasmuch as the ordinance mandates that any entertainer wear the equivalent of a bikini top and bottom.[10] A thorough review of the case law indicates that some lower courts are upholding more restrictive definitions of nudity than articulated in *Barnes.* *See e.g. Bright Lights, Inc. v. City of Newport,* 830 F.Supp. 378, 381 (E.D.Ky.1993) ("bathing suit" requirement on business establishment premises furthered city's reform

---

**9.** Plaintiff claims that the City, through § 1014(A)(1)(g), has violated the state doctrine of state statutory preemption inasmuch as the State of Mississippi has addressed the issue of indecent exposure in its adoption of Miss.Code Ann. § 97–29–31 (1972). Section 97–29–31 provides in pertinent part:

A person who willfully and lewdly exposes his person, or private parts thereof, in any public place, or in any public place where others are present, ... is guilty of a misdemeanor.... Miss.Code Ann. § 97–29–31. Inasmuch as Section 1014(A)(1)(g) is severed from Ordinance 93–37 on other grounds, and inasmuch as this Court is not addressing Ordinance 93–29, such claim is best suited for future litigation. The Court notes, however, that the City defines nudity in conform-

ity with the Mississippi Legislature's definition. *See* Miss.Code Ann. § 19–5–103(2) (Cumm.Supp.1993).

**10.** Although the Court notes that Plaintiff makes no argument that the degree of nudity prohibited by Ordinance 93–37 is the communicative aspect of the message that the dancers are seeking to convey, the Supreme Court has previously ruled that entertainment featuring nude and semi-nude dancing is afforded limited First Amendment protection. *Barnes,* 501 U.S. at 565, 111 S.Ct. at 2460. Moreover, Justice Souter opined that a "dancer's acts in going from clothed to nude, as in a strip-tease, are integrated into the dance and its expressive function." *Id.* at 581, 111 S.Ct. at 2468.

goals). Moreover, the Court has found case law which supports constitutional zoning of such bathing suit type dancing. *See e.g. MD II Entertainment, Inc. v. City of Dallas,* 1993 WL 227774 (N.D.Tex. April 15, 1993); *O'Malley v. City of Syracuse,* 813 F.Supp. 133, 144–45 (N.D.N.Y.1993).

However, the aforementioned case law can be distinguished from the instant case. Ordinance 93–37 purports to respond to the adverse effects of adult entertainment by dispersing such establishments throughout the City. However, any establishment that complies with the requirements of 1014(A)(1)(g) no longer falls under the definition of an adult cabaret, and thus is not required to comply with the locational restrictions. In other words, an establishment that features strippers that disrobe down to a bathing suit can locate anywhere in the City.

Secondly, the City has presented no evidence of harmful secondary effects to support a total ban of adult entertainment defined as adult cabarets. For example, the City does not argue that adult entertainment classified as adult cabarets pose more problems in the area of crime, traffic congestion, negative community perception, exploitation of minors, decrease in the quality of life, and decrease in property values than adult entertainment classified as adult theatres, bookstores or arcades. Indeed, the Court cannot construe any factual basis which would demonstrate that the City ordinanced a ban of adult entertainment featuring live nude or semi-nude dancing in order to preserve its asserted interest in curtailing secondary effects. Although the City need not make independent findings that establishments featuring "bathing suit" dancing will have harmful secondary effects, the Court cannot construe from the evidence that the City evaluated the studies generated from other municipalities on this issue. Moreover, the City, through the testimony and evidence submitted at trial, concedes that the City cannot constitutionally ban adult entertainment altogether. (Exh. D–1A at 2). This is precisely what *Renton* and its progeny teaches. Adult entertainment can be regulated through zoning but it cannot be banned outright. Ac-

cordingly, the City imposed the 1,000 feet restrictions in order to disperse such establishments throughout the City. (*Id.*).

Additionally, the Court finds that Ordinance 93–37 is not narrowly drawn to respond to what might be deemed distinctive problems associated with live entertainment featuring nude and semi-nude dancing. The only evidence presented by the City is that of locational restrictions and licensing requirements placed on adult entertainment to curb adverse secondary effects. Indeed, the City has not even attempted to justify the regulation on that premise. Instead, the City argues that § 1014(A)(1)(g) merely incorporates the City's prohibition of nudity through its indecent exposure ordinance, and that such incorporation furthers its substantial interest in protecting order and morality.

The Court, however, questions such incorporation when the same result can be accomplished through enforcing Ordinance 93–29. Additionally, such a result is also accomplished through Ordinance 93–37 § 1006 which provides that nothing shall be construed to allow public nudity in violation of existing Vicksburg ordinances. (Ord. 93–37 § 1006 at 5). Moreover, a review of the preamble to ordinance 93–37 reveals that the city has not articulated any reason for prohibiting total or partial nudity within adult entertainment businesses. The only mention of prohibiting public nudity is stated as follows:

> WHEREAS, in order to promote and preserve the public peace and good order and to safeguard the health, safety, morals and welfare of the community and the citizens thereof, it is necessary and advisable for the Board to *prohibit certain forms of sexually oriented performances and exhibitions at commercial establishments at which alcoholic beverages, wine and/or beer are available to be sold or consumed;* and ...

(Ordinance 93–37 at 2) (emphasis added). Moreover, the only argument the Defendant makes to the court supporting the City's ban on total or partial nudity is made in reference to those establishments that serve alcohol. (*See* Def.'s Suppl.Find. of Fact and Concl. of Law at 3). Section 1014(A)(1)(g),

however, prohibits total or partial nudity in adult entertainment businesses in all circumstances, whether or not alcoholic beverages are served.

Additionally, this Court cannot find one case which supports a zoning ordinance which effectively nullifies a classification of adult entertainment through its prohibition of public nudity. Other jurisdictions are either zoning adult entertainment to combat secondary effects in compliance with *Renton;* or in compliance with *Barnes,* an incidental effect on nude expression is constitutional inasmuch as such jurisdictions are prohibiting the **conduct** of public nudity citywide in an effort to protect order and morality. What we have before the Court is a hybrid situation—locational zoning and a ban on public nudity within the adult entertainment industry. This effectively creates an unconstitutional provision in § 1014(A)(1)(g). Either one standing alone would more likely pass constitutional muster.[11]

The Court finds that the City has effectively shown how Ordinance 93–37 combats proven secondary effects through locational restrictions placed on adult entertainment businesses. However, an outright ban on adult cabarets featuring nude and semi-nude dancing lacks such justification. Although the City may have a valid interest in protecting order and morality, there is no mention of protecting order and morality through the prohibition of nudity within Ordinance 93–37. The Court finds that the City has not met its burden in showing how a lesser degree of nudity furthers its stated interest in curtailing harmful secondary effects.[12] Accordingly, the City's requirement that the dancers/entertainers wear more clothing than pasties and g-strings is not narrowly tailored to support its asserted interest in protecting and preserving the quality of the city's neighborhoods, inasmuch as these businesses may locate throughout the city. (Ord. 93–37 at 1–2). Moreover, any interest the City has in maintaining order and preserving morality through the prohibition of public nudity is

addressed by Ordinance 93–29. Such ordinance has not been challenged.

Although the Court recognizes that the City may not have realized the effect Section 1014(A)(1)(g) would have on its locational zoning provision articulated in Section 1003(C), such an outright ban on First Amendment expression, without any support in the record or on the face of the ordinance itself cannot be upheld. In sum, Ordinance 93–37, through its prohibition of total nudity, restricts speech much more broadly than necessary to achieve its stated purpose of curtailing secondary effects associated with adult entertainment.

Accordingly, the Court finds that inasmuch as Ordinance 93–37 § 1014(A)(1)(g) prohibits nude and semi-nude dancing throughout the City of Vicksburg, the City has failed to provide reasonable alternative avenues of communication under *Renton.* Moreover, pursuant to the standards set forth in *Barnes v. Glen Theatre,* the Court finds that Section 1014(A)(1)(g) is not narrowly tailored to achieve its stated interest in combatting harmful secondary effects associated with adult entertainment, and the City has failed to sufficiently justify such a ban on nude dancing based on the stated purpose of Ordinance 93–37. Thus, the Court must now consider whether such provision may be severed to preserve the constitutionality of the remaining legislation.

### 4. Severability of Section 1014(A)(1)(g)

The aforementioned contradiction within Ordinance 93–37 demonstrates the difficulty in drafting and implementing intended legislation. Few ordinances are perfect or complete. Often they are subject to different interpretation and construction. Since the Court cannot assume the role of legislator, we can neither speculate as to the intent of the Mayor and Board of Aldermen nor can we redraft the ordinance to cure such a flaw. The Court, however, does have the authority to rule on the constitutionality of Ordinance

---

**11.** The court is not ruling on the constitutionality of Ordinance 93–29.

**12.** The City also articulates a stated interest in protecting and preserving public health and pre-

venting the exploitation of minors. (Ord. 93–37 at 2). This purpose, however, relates to the City's licensing requirements for adult entertainment establishments and their employees. (*Id.*).

93–37 in whole or in part. In so doing, the Court looks to the applicability of Section 1017, the City's "Severability Clause."

The standard for determining the severability of an unconstitutional provision is well established: "Unless it is evident that the Legislature would not have enacted those provisions which are within its power, independently of that which is not, the invalid part may be dropped if what is left is fully operative as law." *Alaska Airlines, Inc. v. Brock*, 480 U.S. 678, 684, 107 S.Ct. 1476, 1480, 94 L.Ed.2d 661 (1987). A court can sever a constitutionally flawed provision if the balance of the legislation is capable of functioning independently. *Id.*

The Court finds that Ordinance 93–37, without Section 1014(A)(1)(g), can function independently. As the Court stated previously, the thrust of Ordinance 93–37 is to combat harmful secondary effects through locational zoning and licensing of adult entertainment. The record wholly supports an ordinance which locationally restricts adult entertainment. Striking a regulatory provision which prohibits public nudity has no bearing on whether the City would have enacted the remainder of Ordinance 93–37. Moreover, the City can accomplish the same task through enforcement of Ordinance 93–29. Additionally, the City's counsel conceded at oral argument that such a severance would not circumvent the purpose of Ordinance 93–37 to combat secondary effects.

Accordingly, Section 1014(A)(1)(g) is hereby severed from Ordinance 93–37.

### B. Constitutionality of Ordinance 93–37 as Severed

#### 1. *Renton* Time, Place, and Manner Analysis

Having ruled on the severability of Section 1014(A)(1)(g), this Court's inquiry, however, is not complete. Inasmuch as the Vicksburg Ordinance no longer effectuates a total ban on adult cabarets, and inasmuch as Section 1002 and Section 1003 prohibit adult entertainment businesses from locating within 1,000 feet of a church, park, school, residential area, library, day care center, or another adult entertainment establishment, it is properly analyzed as a time, place, and manner regulation. *City of Renton v. Playtime Theatres*, 475 U.S. 41, 46, 106 S.Ct. 925, 928, 89 L.Ed.2d 29 (1986); *Lakeland Lounge v. City of Jackson, Miss.*, 973 F.2d 1255, 1257 (5th Cir.1992). Accordingly, the City may constitutionally regulate the location of adult entertainment businesses as long as Ordinance 93–37 is content neutral, is narrowly tailored to serve a substantial governmental interest, and allows for reasonable alternative avenues of communication. *Renton*, 475 U.S. 41, 46, 106 S.Ct. 925, 928 (1986); *Lakeland Lounge*, 973 F.2d 1255, 1257 (5th Cir. 1992).

#### a. Content Neutral

Relying on the analytical framework set forth in *Renton*, this Court's initial inquiry is whether Ordinance 93–37 is content neutral or content based. Because entertainment featuring topless dancing is a form of expression that falls within the parameters of the First Amendment, the City of Vicksburg cannot regulate the speech element of this activity on the basis of its content. After thoroughly reviewing the applicable law and the arguments of counsel at trial, this Court finds that the ordinance in question is content neutral inasmuch as the thrust of 93–37 is aimed at combatting the secondary effects associated with and/or created by the adult entertainment industry.

To support this finding, the Court cites to the testimony of City Alderman Don Miller and City Planning Commissioner Ron Bounds. During trial, Mr. Miller and Mr. Bounds both testified as to the concerns of their fellow city officials, as well as the concerns of their constituents, regarding the effect these businesses could have on the surrounding residential neighborhoods. Specifically, the community and officials voiced concerns regarding the quality of community life and the detrimental effect such businesses would have on the City's noted historic district. The City, through the City Attorney's office and Planning Commission, compiled, reviewed, and considered a study on the adverse secondary effects associated with adult entertainment. The study formed a basis for unanimous recommendation for en-

actment by the Planning Commission. Contained within the study and case law is evidence that adverse secondary effects occur as a result of adult entertainment. The City legitimately relied upon the experiences and studies of other cities, and the Mayor and Aldermen also properly relied upon others commissioned to do research and make recommendations. *Renton*, 475 U.S. at 50–51, 106 S.Ct. at 930–31; *Lakeland Lounge*, 973 F.2d at 1259. Moreover, the language of the ordinance defines its purpose by stating that because of the adverse secondary effects associated with adult entertainment, particularly when such businesses are located in close proximity to each other, Ordinance 93–37 prohibits an adult entertainment business from operating within 1,000 feet of a church, school, residential area, park, day care center, library, or another adult entertainment business. (Ord. 93–37 Sect. 1002).

After considering all of the evidence, the Court finds that the proof fails to support Plaintiff's claim that these locational restrictions incorporated within Ordinance 93–37 are aimed at the content of her proposed expression as opposed to the lawful purpose of curtailing proven adult entertainment secondary effects. The Court finds Ordinance 93–37 content neutral.

**b. Substantial Government Interest**

■ Guided by *Renton*, the Court further finds that the City's goal in combatting these secondary effects is both substantial and narrowly tailored. The evidence shows that the prohibition of adult entertainment in specified locations is done in an effort to curtail blight, prevent an increase in crime and a decrease in property values, and reduce the exposure of minors to harmful activity or materials. Through the testimony and evidence admitted at trial, the City has met its burden in demonstrating a substantial need for regulating adult entertainment in order to combat such harmful secondary effects.

**c. Reasonable Alternative Avenues of Communication**

■ The Court must now determine the availability of site locations in which Plaintiff can establish a lounge featuring topless dancing in the City of Vicksburg. The Court must consider whether Ordinance 93–37 leaves available land that is physically and legally suitable for adult entertainment businesses. *Lakeland Lounge*, 973 F.2d at 1260 (citing *Woodall v. City of El Paso*, 950 F.2d 255 (5th Cir.), *modified*, 959 F.2d 1305, 1306 (5th Cir.), *cert. denied*, —— U.S. ——, 113 S.Ct. 304, 121 L.Ed.2d 227 (1992)).

The City, through the testimony of City Planning Commissioner, Ron Bounds, submitted evidence of 93 potential sites, totalling 3,656 available acres suitable for adult entertainment in the City of Vicksburg. Utilizing a computer software program, the City calculated these potential site locations pursuant to the 1,000 feet restrictions imposed by the Ordinance. Through such computations, the City found that 16% of Vicksburg's total acreage meets the locational restrictions for adult entertainment.

■ Although the City does not have to provide commercially desirable land, it does have to provide accessible land that is free of legal or physical impediments. *Lakeland Lounge*, 973 F.2d at 1260. The record reflects that the City Planning Commission, through its engineering department, calculated potential adult entertainment sites based only on locational restrictions. Although the City did not specifically research whether there were legal impediments to title acquisition, no evidence was submitted to the contrary. Further, Mr. Bounds verified road access for nineteen potential sites depicted by Defendant's exhibit D16, eight of the seventeen potential sites in D17, one of the two potential sites located in D21, eleven of the sites in D22, all fifteen sites depicted in D23 and the eleven sites shown on map D24. Also, Mr. Bounds testified that the four potential sites located on Map # 111 (Exh. D18) represent land along Highway 61 South and that such land is now available for sale and/or lease.

■ Assuming, *arguendo*, that only the aforementioned sixty-nine sites have the necessary road access and thus qualify as suitable sites under *Renton*, the City has nevertheless met its burden in providing alternative avenues of communication. Nothing in the record indicates that these remaining

**16**

locations are inaccessible, without utilities, or that legal obstacles exist. There is no requirement that a specific percentage of a municipality be available for adult entertainment. *Lakeland Lounge*, 973 F.2d at 1260. The sites in the instant case certainly exceed the 5% availability that the Supreme Court found sufficient in *Renton*. The testimony at trial also indicates that the City of Vicksburg has only one other establishment (Hill City News) which falls under the classification of adult entertainment. At the time of trial, Plaintiff was the only applicant for such a license. Thus, given the limited demand for such adult entertainment within the City, the Court finds that Plaintiff has sufficient alternative channels of communication. *See e.g. Renton*, 475 U.S. at 50, 106 S.Ct. at 930 (a large number of sites were unnecessary given the limited demand for adult entertainment space).

### 2. Overbreadth and Void for Vagueness Analysis

Plaintiff claims that the City of Vicksburg's ordinance amendments which attempt to forbid public nudity are overly broad and vague in violation of the First Amendment. (Pl.'s Mot. for Prelim.Injunc. at 3, ¶ 10). The Court notes that Plaintiff did not allege such cause of action in her Complaint, nor did she amend her Complaint to conform to the evidence following the hearing for preliminary relief or the trial on the merits. Moreover, Defendant objected to such claims as outside the pleadings at trial. Finally, Plaintiff did not argue overbreadth or vagueness in her Proposed Findings of Fact and Conclusions of Law submitted to the Court after trial. Although the Court may construe Defendant's letter dated January 5, 1994 as consent to such claims, the Court finds that such analysis is moot inasmuch as the Court has severed Section 1014(A)(1)(g) on other grounds.

### 3. Licensing Fee

■ Ordinance 93–37 § 1008 provides that any individual who desires to maintain or operate an adult entertainment business must first obtain a license. Section 1010(E) requires that each application shall include a $1200.00 non-refundable application fee, which is applied as the license fee for the first year. Additionally, such adult entertainment businesses are subject to an annual license fee of $1200.00 for each subsequent year of operation. (Ord. 93–37 § 1011(E)).

■ Plaintiff claims that this application and/or license fee of $1200.00 per year is excessive. Plaintiff further argues that such a fee is a selective tax levied on businesses seeking to engage in protected speech activities. In so arguing, Plaintiff claims that the City's fee is unconstitutional inasmuch as other entertainment businesses are not required to pay such a fee, and because the City's reasons for imposing said fee are not rationally related to its asserted interest.[13]

■ It is well settled that local governments have broad regulatory authority, through their police power, over public health and welfare. *Harper v. Lindsay*, 616 F.2d 849 (5th Cir.1980). Moreover, the Supreme Court has consistently upheld the placing of adult entertainment facilities in a category or classification different from other entertainment facilities. *Young v. American Mini Theatres, Inc.*, 427 U.S. 50, 70–71, 96 S.Ct. 2440, 2452–53, 49 L.Ed.2d 310 (1976). Although the Court recognizes that a governmental authority may impose a fee that is incidental to a valid licensing or permitting scheme, when such a fee is required it must be a "nominal fee imposed as a regulatory measure to defray the expenses of policing the activities in question." *Murdock v. Pennsylvania*, 319 U.S. 105, 113–14, 63 S.Ct.

---

13. The United States Supreme Court has proclaimed that local governments may regulate First Amendment activities by means of a licensing or permitting scheme. *Cox v. New Hampshire*, 312 U.S. 569, 574–76, 61 S.Ct. 762, 765–66, 85 L.Ed. 1049 (1941). Such permitting schemes are analyzed to determine whether they are a valid content-neutral time, place, and manner regulation or whether they constitute a prior restraint on free speech. *FW/PBS Inc. v. City of Dallas*, 493 U.S. 215, 223, 110 S.Ct. 596, 603, 107 L.Ed.2d 603 (1990). Although Plaintiff alludes to prior restraint claims in her motion for preliminary injunction, such claims are not urged upon the Court through the parties' Pretrial Order nor through argument at trial. Accordingly, the Court treats such claims as abandoned.

870, 875, 87 L.Ed. 1292 (1943). The licensing authority bears the burden in showing that the licensing fee is necessary to cover the reasonable costs of the licensing system. *Id.*

Turning to the case at hand, the Court finds that the City has met its burden in demonstrating that its $1200.00 licensing/application fee is reasonably related to the costs of administering its adult entertainment zoning ordinance. The Court makes this finding even though the City admits that it has little experience in enforcing this newly drafted ordinance inasmuch as Hill City News is the only adult entertainment establishment located within the City, and even though Plaintiff has been the only applicant for such a license.

Officials testified that the City will utilize this application fee to conduct investigations and inspections necessary to process adult entertainment applications. Also, the annual license fee is imposed to defray costs of periodic inspections of the adult entertainment businesses. (Ord. 93–37 § 1001(E)(2)). Essentially, the City conducted a financial analysis and cost study of projected application and enforcement costs amounting to $1200.00 per year. Mr. Paul Rogers, a member of the Planning Commission, testified that he conducted such a study to insure against the overcharging of applicants, and to insure that the City did not incur more costs than necessary. Should the City determine that such fee is excessive or insufficient, the City has reserved the right to revise said fee to insure that such fees cover the costs of administering and enforcing the ordinance. (Ord. 93–37 § 1011(E)(3)).

Mr. Ed Partridge, the city building official responsible for the enforcement of Ordinance 93–37, testified that such fees defray the costs of various inspection requirements imposed on adult entertainment businesses. In other words, the $1200.00 fee defrays such adult entertainment regulatory requirements as enforcing applicable building codes; making inspections assuring compliance with applicable fire and health statutes; analyzing floor plans and stage height requirements; conducting police background checks and identification procedures of employees, and evaluating the various 1,000 feet locational restrictions for said businesses.

To support its claim that the City is not targeting Plaintiff's expression, the City showed that casino licensing fees amounting to $5,000.00 are imposed to defray reasonable expenses in connection with the gaming industry. Indeed, Plaintiff has failed to demonstrate how this $1200.00 prevents her from opening an establishment featuring semi-nude dancing.

In sum, the City has provided legitimate reasons for imposing a $1200.00 licensing/application fee. Accordingly, Plaintiff's claim on this issue must fail.

## C. Twenty–First Amendment

█ Plaintiff argues that the City has no authority to prohibit the exposure of "specified anatomical areas" or "specified sexual activities" where alcoholic beverages, light wine, or beer are sold or consumed. Plaintiff further argues that the City's reliance on Miss.Code Ann. § 67–3–65 (1972) is misplaced inasmuch as said statute does not delegate to municipalities the authority to regulate the sale of alcoholic beverages.[14]

█ In *New York State Liquor Authority v. Bellanca,* 452 U.S. 714, 101 S.Ct. 2599, 69 L.Ed.2d 357 (1981), the Supreme Court held that the Twenty–First Amendment authorizes states to regulate nude dancing in places serving alcoholic beverages. A state has absolute power under the Twenty–First Amendment to prohibit the sale of alcoholic beverages within its borders. *Id.* at 715, 101 S.Ct. at 2600 (citing *Ziffrin, Inc. v. Reeves,* 308 U.S. 132, 138, 60 S.Ct. 163, 166, 84 L.Ed. 128 (1939)). This power to ban the sale of such beverages includes the authority to ban the sale of alcoholic beverages where topless dancing occurs. *Id.* at 717, 101 S.Ct. at 2601. Any artistic or communicative value

---

**14.** Plaintiff is correct in stating that the Mississippi Legislature has delegated to the Mississippi State Tax Commission Alcoholic Beverage Control Division the authority to promulgate rules and regulations regarding the sale of alcoholic beverages. *See* Miss.Code Ann. § 67–1–37 (1972). However, through Regulation No. 16, adult entertainment is prohibited where alcoholic beverages are sold.

that may arise from topless dancing is overridden by the state's exercise of its broad powers arising under the Twenty–First Amendment. *Id.* at 718, 101 S.Ct. at 2601. Furthermore, a municipality's interest in maintaining order where alcoholic beverages are sold outweighs individuals' interest in free expression by dancing nude. *City of Newport v. Iacobucci,* 479 U.S. 92, 97, 107 S.Ct. 383, 386, 93 L.Ed.2d 334 (1986). The Twenty–First Amendment confers "something more than the normal state authority over public health, welfare, and morals." *Iacobucci,* 479 U.S. at 95, 107 S.Ct. at 385 (quoting *California v. LaRue,* 409 U.S. 109, 114, 93 S.Ct. 390, 395, 34 L.Ed.2d 342 (1972).

▮ Additionally, the Supreme Court held in *Iacobucci,* that the allocation of authority between a state and its local governments to regulate liquor establishments is irrelevant to the federal free speech question. A state can generally delegate its twenty-first amendment powers as it sees fit. *Iacobucci,* 479 U.S. at 96–97, 107 S.Ct. at 385–86.

▮ The Fifth Circuit addressed the issue of state delegation to local authorities in *Davidson v. City of Clinton,* 826 F.2d 1430 (5th Cir.1987). The Court first noted that the police power confers on the local governmental units broad regulatory authority over public health, welfare, and morals. *Id.* at 1433 (citing *Harper v. Lindsay,* 616 F.2d 849 (5th Cir.1980)). Pursuant to such police power, the discretionary rights of the states to regulate liquor sales is extensive. *Id.* The Court further found that the Mississippi Legislature had specifically granted municipalities authority to regulate the sale of light wine and beer through the passage of Miss. Code Ann. § 67–3–65 (1972), which provides:

> Municipalities may enforce such proper rules and regulations for fixing zones and territories, prescribing hours of opening and of closing, *and for such other measures as will promote public health, morals, and safety, as they may by ordinance provide.*
>
> \* \* \* \* \* \*
>
> Nothing in this chapter shall prohibit the governing body of any municipality from designating what territory surrounding churches and schools in said municipalities, ... in which light wines and beer shall not be sold or consumed.

Miss.Code Ann. § 67–3–65 (1972) (emphasis added).

Thus, pursuant to its broad police powers in this area and pursuant to specific delegation by the state legislature, the City of Vicksburg is authorized to enact ordinances regulating light wine and beer. Pursuant to such authority, it may ban the sale and/or consumption of beer and light wine on adult entertainment premises. It may do so without offering evidence of any secondary effects or showing that such establishments are conducive to criminal behavior. In this context, any artistic or communicative value that may attach to topless dancing is overridden by the City's exercise of its broad powers arising under the Twenty–First Amendment. Accordingly, the City's prohibition of light wine and beer in a lounge featuring topless dancing is constitutionally permissible.

## II. State Law Claims

As the Court noted previously, it has been somewhat unclear throughout these proceedings as to what specific issues Plaintiff intends to litigate. Plaintiff initially challenged Ordinance 93–37 on First Amendment and Equal Protection grounds. (Compl. at 4–6). However, the present litigation has evolved into a state law attack on the City's authority to adopt specific provisions of the licensing and regulatory scheme of Ordinance 93–37.

The Court will strictly adhere to the parties' pretrial order as it amends the parties' previous pleadings. Plaintiff raised numerous issues outside her complaint in her motion for preliminary relief, and Plaintiff did not subsequently amend her complaint to add these additional claims. However, pursuant to Rule 15 of the Federal Rules of Civil Procedure, "when issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings." F.R.Civ.P. 15.

At trial, the Court allowed Defendant a standing objection to the following state law claims as constituting issues outside the

pleadings: (1) whether the city complied with state law in the adoption of its zoning ordinance; (2) whether the city had the authority to adopt licensing and regulatory provisions under its grant of authority to enact zoning ordinances; and (3) whether the city has the authority to refuse to issue a beer privilege license because an applicant has also applied for an adult entertainment license. (Pretrial Order at 15, para. 15).

The Court finds that the aforementioned issues are outside the pleadings and are not properly before the Court. However, inasmuch as the Court construes Defendant's submission of issues by letter dated January 5, 1994, as consent, the Court will address Plaintiff's claim challenging the City of Vicksburg's authority to consolidate licensing and regulatory provisions within a zoning ordinance.

### A. Authority to Include Licensing and Regulatory Provisions within a Zoning Ordinance

Plaintiff challenges the City's authority to establish a zoning ordinance which includes licensing and regulatory provisions. The Court has already observed that a municipality has broad zoning and regulatory powers over public health, welfare, and morals. Using such power, the City drafted a locational zoning ordinance which, among other things, provides licensing, a fee schedule, and various other regulatory provisions.

▮ Although the Court has found that other jurisdictions generally implement separate ordinances, the Court does not agree that such a consolidation violates state law. *See e.g., FW/PBS, Inc. v. City of Dallas,* 493 U.S 215, 220, 110 S.Ct. 596, 601, 107 L.Ed.2d 603 (1990) (Dallas adopted comprehensive ordinance incorporating zoning, licensing, and inspections). Pursuant to Miss.Code Ann. § 21–13–9 (1972), an ordinance cannot contain more than one subject, and such subject must be clearly expressed in its title. The Mississippi Supreme Court reasoned that such a requirement is necessary in order to "prevent the practice of joining in the same ordinance incongruous subjects having no relation or connection with each other,...." *Blacklidge v. Gulfport,* 223 So.2d 530, 534

(Miss.1969) (citing 5 McQuillin, *Municipal Corporations* § 16.17 (3rd ed. 1949)).

The title to Ordinance 93–37 is *Ordinance Establishing Zoning Regulations For Adult Entertainment Businesses Thereby Amending The Zoning Ordinance of the City of Vicksburg, Establishing Licensing Provisions and Other Regulations.* Such Ordinance establishes locational restrictions for adult entertainment businesses and regulates the various uses through license requirements. Because the topics mentioned in the Ordinance title are **germane** to the single subject of regulating adult entertainment land use, *Blacklidge,* 223 So.2d at 534, the Court finds that Ordinance 93–37 does not violate Miss.Code Ann. § 21–13–9.

### III. Damages

The Court finds that Plaintiff has failed to establish that she sustained actual monetary damages as a result of the City's enforcement of Ordinance 93–37. Inasmuch as the City's licensing/application fee passes constitutional muster, Plaintiff is not entitled to recover the $1,200.00 she paid to the City. Additionally, because Plaintiff's proposed location at 1101 Mulberry street violates the City's locational zoning of adult entertainment, the City actions in prohibiting Plaintiff from establishing entertainment in the form of topless dancing at such location is constitutionally permissible.

### CONCLUSION

It is the decision of this Court that Ordinance 93–37, as severed, is a constitutional time, place, and manner regulation of adult entertainment businesses within the City of Vicksburg. The Court finds that said ordinance is content neutral inasmuch as the City is dispersing such entertainment in an effort to curtail harmful secondary effects. The Court further finds that the City has a substantial interest in pursuing these interests, and that the City has provided Plaintiff, and others similarly situated, reasonable alternative avenues of communication.

The Court finds that because Plaintiff's location at 1101 Mulberry street is within 1,000 feet of a residential neighborhood and

within 1,000 feet of another adult entertainment business, the City's denial of Plaintiff's adult entertainment license is not an infringement on Plaintiff's right to free expression.

The Court further finds that the City has the authority to establish a $1200.00 licensing/application fee, and that such fee is rationally related to the City's effort to defray costs associated with the administration and enforcement of Ordinance 93–37.

The Court finds that the City of Vicksburg has the authority, under the Twenty–First Amendment, to ban the sale of light wine and beer in adult entertainment establishments.

The Court finds that the City has the authority to adopt a comprehensive ordinance incorporating zoning, licensing, and regulatory provisions pertaining to adult entertainment.

Finding that Ordinance 93–37 can function independently without Section 1014(A)(1)(g), this Court hereby severs such provision pursuant to Ordinance 93–37's severability clause. The Court severs Section 1014(A)(1)(g) inasmuch as said provision places a citywide ban on adult cabarets featuring live nude dancing. Such a ban must fail inasmuch as the City did not provide a factual basis to support such an outright ban on adult cabarets, and/or that such a prohibition is not narrowly tailored to further the City's stated interest in combating harmful secondary effects through locational zoning.

It is the decision of this Court that the Defendant is entitled to a judgment on all remaining claims made by Plaintiff in the above-referenced cause.

The Court further finds that Defendant's Rule 11 motion is hereby denied.

Counsel for the Defendant shall submit a Judgment in conformity with the foregoing Bench Opinion within ten (10) days of the date of entry hereof.